■ Luis A. Anguita et al., on Behalf of Themselves and All Others Similarly Situated, et al., Appellants, v Edward I. Koch, as Mayor of the City of New York, et al., Respondents.

The underlying action, *inter alia,* challenges a Memorandum of Understanding (MOU), dated June 30, 1988 between the City and Lefrak for the development of the Seward Park Extension Urban Renewal Area (SPEURA), a fourteen block area on the Lower East Side of Manhattan, title to which had been taken by the City in 1967. Five of the plaintiffs sue on behalf of a purported class of lower income persons who formerly resided in SPEURA and claim to have been displaced. Two others are taxpayers who challenge the expenditure of public funds for the project. In essence, plaintiffs claim that the proposed housing will benefit only middle and upper income families and that low income citizens are being deprived of any opportunity to obtain housing in SPEURA. According to plaintiffs, the City brought about the removal and relocation of 1,852 families, obtaining the cooperation of those affected by promising them that they would be "invited to return" to any housing built on the site. In May 1988, the City designated Lefrak to build and manage a 1,200-unit housing project on the last remaining vacant sites of SPEURA. Plaintiffs claim that all 1,200 units are designated for households earning $19,000 or more, thereby effectively excluding families of low income. In June 1988, the Department of Housing Preservation and Development (HPD) entered into a MOU with Lefrak for the development of the site. According to plaintiffs, HPD has arranged for below-market rate financing and Lefrak has already received a $250,000 pre-construction loan, which will be forgiven if Board of Estimate approval for the project is not obtained. In addition, Lefrak would obtain a long term lease, with an option to purchase, at a nominal price. Plaintiffs allege that the MOU and loan agreement were the product of "secret" negotiations between the City and Lefrak and that the City's Request for Qualifications to Lefrak's competitors was tailored to Lefrak's benefit. Ultimately, only one other proposal was submitted. It was rejected.

In their first cause of action plaintiffs allege that they and others similarly situated left their homes as consideration for the right to return and that to the extent the City has expressed an "intention" to deny plaintiffs that return, it has breached a contract. In the second cause of action, plaintiffs allege that the MOU ignores and therefore violates relocation requirements imposed by the National Housing Act (now Housing and Community Development Act, 42 USC § 5301 *et*

*seq.).* In the third, plaintiffs allege that by virtue of statute and the City's promise they have vested property rights in SPEURA housing, which have been denied without due process. By their fourth cause of action, plaintiffs allege that Lefrak's designation as the developer was a "sham" and a violation of both New York City Charter § 384 and General Municipal Law § 507. The fifth cause of action alleges that the designation was arbitrary and capricious. In the sixth cause of action, the taxpayer plaintiffs allege that the Lefrak's designation is a waste of public funds in violation of General Municipal Law § 51. In the seventh cause of action, plaintiffs allege that the seed money loan provision violated article XII of the Private Housing Finance Law which required the Housing Development Corporation to expend money solely for families and persons of low income.

The City moved and Lefrak cross-moved to dismiss the amended complaint, arguing that the action was not ripe for review because Lefrak's designation was still subject to Board of Estimate approval pursuant to New York City Charter § 67 (4) and § 384 (a), land use review under Uniform Land Use Review Procedure pursuant to New York City Charter § 197-c, and may require environmental review under the State Environmental Quality Review Act, pursuant to ECL article 8, and the City Environmental Quality Review, pursuant to a 1977 mayoral order. By a supplemental notice of motion, the City moved to dismiss, on the ground of failure to state a cause of action, the seventh cause of action and so much of the sixth cause of action that challenged the use of the seed money loan. The IAS court found that the issues presented by the motion, whether there is a legal duty to use the funds in question for low-income housing, determining the level of income that qualifies as low income and whether the process of designating Lefrak was done in a manner contrary to law, were "essentially political" and declined to review them until the Board of Estimate had acted and the final administrative review process was complete. In a disposition not now at issue, it found the taxpayer action inadequately pleaded. The court dismissed all the causes of action without prejudice except for the seventh cause of action and part of the sixth insofar as it alleges the unlawfulness of the " 'lending of public moneys' ", which it dismissed with prejudice. We modify to reinstate the fourth, fifth and seventh causes of action.

The court properly dismissed the first, second and third causes of action, premised upon the claim that five of the plaintiffs and others similarly situated were removed from

their homes on the promise that they would be returned to new housing built on the site with public funding. Until final approval of the plan, however, it cannot be determined just what type of housing will be built on the site. While, under the terms of the MOU, all of the presently proposed SPEURA housing will require a minimum income of $19,000, which none of these plaintiffs and those similarly situated can afford, the minimum income requirements may well be changed before final approval is given. Thus, these causes of action are not justiciable.

The fourth and fifth causes of action, however, do not suffer from the same defect. These causes are premised upon the charge that the City's designation of Lefrak as the developer was arbitrary and capricious and in violation of applicable law. They pose questions as to whether the municipal defendants had the authority to enter into the MOU and whether its terms comport with applicable law. These are issues which are justiciable without any further action on the part of the municipal defendants. Moreover, it is doubtful whether any further review and subsequent consideration on the question of approval would encompass those issues. Thus, the fourth and fifth causes of action should not have been dismissed.

As the municipal defendants concede, the seventh cause of action is ripe for review. Although the sixth cause of action, at least in part, raises the same substantive issue as the seventh, plaintiffs do not dispute that the taxpayer cause of action should have been dismissed. On the merits, the seventh cause of action should not be dismissed. Since the motion is brought pursuant to CPLR 3211 (a) (2), the factual averments must be accepted as true and the complaint liberally construed in the pleader's favor. (Metropolitan Transp. Auth. v Triumph Adv. Prods., 116 AD2d 526, 527.) Nor should evidentiary matter be considered since it is manifest that a cause of action exists. (See, Guggenheimer v Ginzburg, 43 NY2d 268, 275.) Our concern on such a motion is not ultimate merit. Here, plaintiffs claim that the seed money came directly from the Housing New York Program in violation of Private Housing Finance Law § 654-c, which limits the allocation of program funds in accordance with income percentages not followed by the MOU. While the municipal defendants argue that the seed money emanates from a segregated source outside of Housing New York Program funds and that the income from the market-rate housing portion of the SPEURA project will directly subsidize the portion providing low and moderate income housing, these assertions, which draw some support

from the MOU and seed money documents, do not appear from such documentation to be undisputed. Nor are they conceded. Moreover, whether the municipal defendants are correct in arguing that the terms of the MOU are consistent with the Private Housing Finance Law, since income from the market-rate housing portion, approximately one-third of the project, consisting of condominiums, will subsidize the low and moderate income housing, presents a question of fact.

Thus, the order should be modified as indicated and otherwise affirmed. Concur—Murphy, P. J., Sullivan, Milonas, Ellerin and Smith, JJ.