■ STUART SALLES et al., Appellants, v CHASE MANHATTAN BANK et al., Respondents. [754 NYS2d 236] —Order, Supreme Court, Bronx County (Louis Benza, J.), entered May 9, 2001, which, insofar as appealed from as limited by the briefs, granted the motion of defendants to dismiss plaintiffs' causes of action for common-law fraud, for a scheme to defraud in violation of Penal Law §§ 190.60 and 190.65, and for falsification of records pursuant to Banking Law § 672, modified, on the law, to deny defendants' motion with respect to the cause of action for fraud as asserted by the attorney-plaintiffs and to reinstate that claim, and otherwise affirmed, without costs.

In a prior action for personal injuries against the Manhattan and Bronx Surface Transit Operating Authority (MABSTOA), the present attorney-plaintiffs, Edelman & Edelman, P.C. (Edelman), successfully represented Stuart Salles in his capacity as court-appointed Committee for Bessie Schneider. The Schneider action was commenced in 1990 and came to a final resolution after protracted litigation, including a retrial, when, on December 17, 1998, the Court of Appeals denied leave to appeal (92 NY2d 817) from this Court's affirmance (250 AD2d 548) of a judgment finding MABSTOA 100% liable and awarding Salles an annuity providing future annual payments and medical benefits plus an "immediate cash payment" award of approximately $1.5 million, of which $791,614 was to be paid to Salles for the benefit of Schneider and $684,006 was to be paid to Edelman in satisfaction of the contingency fee agreement between Salles and Edelman (the Schneider Judgment). Interest was to accrue on the immediately payable cash portion of the judgment until the date of payment.

The present case, brought by Salles and by the attorneys as plaintiffs, against the Chase Manhattan Bank and the Chase Manhattan Bank, N.A. (collectively, Chase), arises from what plaintiffs allege were fraudulent misrepresentations by Chase regarding its custody of MABSTOA bank accounts, against which plaintiffs sought to enforce the Schneider Judgment. Plaintiffs contend that Chase's alleged misrepresentations caused plaintiffs to suffer damages in the form of uncompensated attorney and staff time plus additional expenses incurred in the enforcement of the Schneider Judgment.

According to plaintiffs, when MABSTOA refused to comply with plaintiffs' December 22, 1998 demand that it pay the immediately payable cash portion of the Schneider Judgment within six days, plaintiffs sought to enforce that judgment through presentment to Chase, which plaintiffs believed held MABSTOA accounts, of a restraining notice and two sheriff's levies and executions, which required Chase to pay the cash amounts due to Salles and Edelman under the Schneider Judgment from the MABSTOA accounts. The complaint alleges that, in response to the sheriff's levies and executions and plaintiffs' restraining notices, Chase knowingly, intentionally and falsely represented that it held no MABSTOA accounts or assets, when, in fact, it had at least 15 accounts in the name and/or for the benefit of MABSTOA, one of which contained nearly $3 million, more than a sufficient amount to satisfy the Schneider Judgment. The complaint details alleged stonewalling efforts and outright refusals to comply with the sheriff's levies and executions by Chase. Plaintiffs allege that Chase, acting on behalf of a valued customer, deliberately made these false representations and refused to comply with the sheriff's levies and executions in order to impede plaintiffs' ability to collect the Schneider Judgment. The complaint further alleges that plaintiffs reasonably relied on Chase's false representations, and that, as a result, Edelman was compelled to undertake additional unnecessary and uncompensated work, including bringing a CPLR article 78 mandamus proceeding to compel MABSTOA to pay the amounts due under the Schneider Judgment. According to plaintiffs, although MABSTOA eventually paid the cash portion of the Schneider Judgment, it did so only in response to the article 78 order to show cause and after Edelman had expended significant attorney and staff time and incurred additional expenses in seeking to enforce the Schneider Judgment, all of which allegedly were necessitated by Chase's misrepresentations and refusals to comply with the sheriff's levies and executions and none of which were covered by plaintiffs' contingency-fee agreement in the Schneider action.

The complaint asserted causes of action against Chase for, inter alia, common-law fraud, for a scheme to defraud in violation of Penal Law §§ 190.60 and 190.65, and for falsification of records pursuant to Banking Law § 672. Plaintiff attorneys claim compensatory damages of $100,000 in unpaid fees and expenses and seek punitive damages in addition to the claimed compensatory losses.

In lieu of an answer, Chase filed a motion to dismiss the complaint for failure to state a claim and for lack of standing pursuant to CPLR 3211 (a) (7). Supreme Court granted Chase's motion holding, inter alia, that plaintiffs lacked standing to sue and that they suffered no damages as the Schneider Judgment had been paid in full. We modify only to the extent of reinstating the attorney-plaintiffs' cause of action for common-law fraud.

In deciding a motion to dismiss a complaint for failure to state a claim under CPLR 3211, the allegations of the complaint, and all reasonable inferences that may be drawn from those allegations, must be accepted as true and the complaint must be liberally construed in favor of the plaintiff (*Anguita v Koch*, 179 AD2d 454). In addition, while a plaintiff may be required to supply evidentiary support for his claims in response to a motion for summary judgment under CPLR 3212, he is not obligated to do so in response to a preanswer motion to dismiss under CPLR 3211. The criterion for decision on such a motion is whether the allegations of the complaint state a legally cognizable cause of action (*see e.g. Held v Kaufman*, 91 NY2d 425, 432). The court's role is simply to determine whether the facts, as alleged, fit into any valid legal theory (*Sokoloff v Harriman Estates Dev. Corp.*, 96 NY2d 409, 414). In deciding such a preanswer motion, the court is not authorized to assess the relative merits of the complaint's allegations against the defendant's contrary assertions or to determine whether or not plaintiff has produced evidence to support his claims (*see e.g. Residence on Madison Condominium v W.T. Gallagher & Assoc.*, 271 AD2d 209, 210; *Washington Ave. Assoc. v Euclid Equip.*, 229 AD2d 486).[1]

The complaint alleges the necessary elements of a claim for common-law fraud: defendant's knowing misrepresentation of a material fact, made with intent to deceive, plaintiff's reason-

---

**1.** The dissent's assertion that Chase's erroneous representations as to its custody of MABSTOA accounts were "clearly a mistake," an "obvious mistake," a simple "mixup" is neither supported by the record nor an appropriate exercise in deciding the issue of whether Supreme Court properly granted Chase's CPLR 3211 motion to dismiss.

able reliance, and damages (*see Caniglia v Chicago Tribune-New York News Syndicate*, 204 AD2d 233, 234).

Supreme Court apparently confused the attorney-plaintiffs' common-law fraud claim with a claim arising from a garnishee's failure to comply with a sheriff's levy and execution under article 52 of the CPLR, which, the court held, could only be asserted by Salles, the judgment creditor in the underlying Schneider personal injury action.[2] However, the attorney-plaintiffs' common-law fraud claim is not derivative, nor is it brought under article 52. The attorney-plaintiffs alleged that Chase fraudulently misrepresented that it had no accounts and no assets of the judgment debtor MABSTOA, and that *they* (the attorney-plaintiffs) were forced, as a result of Chase's misrepresentations, to expend a significant number of attorney and staff hours and to incur additional expenses in undertaking alternate and, but for Chase's fraudulent conduct, unnecessary means of enforcing the Schneider Judgment. Accepting the allegations of the complaint as true, as we must, it is clear that the attorney-plaintiffs sufficiently state a cause of action for common-law fraud against Chase.

Supreme Court's conclusion that the attorney-plaintiffs suffered no damages also misses the mark. The common-law fraud claim asserted by Salles was properly dismissed because, as plaintiffs acknowledge, the attorneys' fees he was to pay were fixed by his contingency agreement with Edelman, regardless of how many hours were expended in enforcing the judgment. Thus, once MABSTOA paid the Schneider Judgment, Salles had no damages resulting from Chase's alleged fraud. However, the attorney-plaintiffs allege that the extra work they were required to perform and the additional expenses they incurred in enforcing the Schneider Judgment as a result of Chase's alleged fraud were uncompensated and unrecovered. Those damages did not disappear because the Schneider Judgment, together with accrued interest, was ultimately paid.

Contrary to the dissent's characterization of the complaint, the attorney-plaintiffs do not complain here that Chase did not "timely pay [their] client the judgment award," but, rather, that Chase acted fraudulently and thereby caused them to incur financial losses. Moreover, underlying the dissent's conclusion that the plaintiff-attorneys' common-law fraud claim was properly dismissed is the determination that the attorneys' contingency-fee agreement with Salles in the Schneider case, as a matter of law, must be construed to cover extraordinary

---

**2.** While not central to our decision, it should be noted that the attorney-plaintiffs were, along with Salles, judgment creditors in the Schneider case.

judgment-enforcement efforts, including countering fraudulent conduct by MABSTOA's bank. As an initial matter, that is an interpretation that both parties to that agreement apparently reject in the allegations of the complaint. Moreover, such a determination would require that the attorney-plaintiffs must bear whatever financial burdens might have been caused by Chase's allegedly fraudulent conduct, a result that is clearly at odds with accepted notions of fault-based liability (*see e.g. Mazzuka v Bank of N. Am.*, 53 Misc 2d 1053, 1056 [garnishee bank is liable in negligence for damages caused by its violation of a restraining notice]). In any event, any interpretation of the contingency-fee agreement in the Schneider case is wholly unnecessary and irrelevant to a determination as to whether the complaint sufficiently states a cause of action for common-law fraud so as to defeat defendant's preanswer motion to dismiss under CPLR 3211.[3] In our view, the complaint satisfies that requirement with respect to the attorney-plaintiffs' common-law fraud claim.

We do not disturb the motion court's dismissal of plaintiffs' claims based on Penal Law §§ 190.60 and 190.65 and Banking Law § 672. The Penal Law claims are deficient for failing to allege a systematic course of conduct, and we perceive no legal basis for plaintiffs' contention that there is a private right of action under Banking Law § 672. Concur—Sullivan, Rosenberger, Wallach and Rubin, JJ.

Tom, J.P., dissents in a memorandum as follows: I have great concern with the result reached by the majority in connection with the fraud claim: that a plaintiff's attorney under a contingency fee agreement, who is not a party to the underlying negligence action, somehow attains standing to personally sue the depository bank of the defendant judgment debtor in fraud for the bank's failure to timely pay the attorney's client the judgment award, when there is an apparent mixup regarding the parties and the accounts. This is an action by the law firm who litigated on behalf of the judgment creditor and who sought to recover its attorneys' fees as a part of the judgment from the judgment debtor's depository bank directly, and which

---

**3.** Similarly, the dissent's dissatisfaction with the evidentiary state of the record is not a basis for dismissing the attorney-plaintiffs' cause of action for common-law fraud, since, as previously noted, we are constrained to do no more than decide whether the allegations in the complaint state a legally cognizable claim. Nor is what the dissent characterizes as the attorney-plaintiffs' "impatien[ce]" in seeking enforcement of the Schneider Judgment relevant to the issue presented, particularly since the Schneider Judgment mandated that the cash award was to be paid immediately, not within the 30 days MABSTOA usually took to pay settlement awards.

then personally sued the bank when its demand was temporarily frustrated. The ramifications of the majority's holding extend far beyond just this case and would, I submit, open the floodgates to alleged fraud litigation by impatient attorneys against banks. Rather than waiting a short and reasonable time period, this law firm, by its own accounting, generated significant legal expenses litigating very dubious claims against the bank. Nowhere in this poorly prepared appellate record is there any credible indication that there was any likelihood that the bank would act to frustrate payment or that counsel would not be paid within a reasonable time period. Even if the standing requirements were satisfied in this case, however, fraud has not been successfully pleaded. Accordingly, I would affirm the order of the motion court in its entirety.

In the underlying personal injury action against MABSTOA, Bessie Schneider was the injured party. Present plaintiff Stuart Salles was appointed to act as Committee for Ms. Schneider, who is incompetent and as such was plaintiff in the personal injury action. Edelman & Edelman, P.C. (Edelman), present plaintiff, was retained as counsel for Ms. Schneider. At the conclusion of litigation, Salles, on Ms. Schneider's behalf, received a judgment awarding damages consisting of an immediate payment and an annuity payable in future annual payments. Counsel fees and disbursements were set at $684,000. Plaintiff-appellant has failed to include a copy of this judgment in the appellate record. Presumably, as is the normal procedure, the judgment accrued to the plaintiff in that action, with a portion of that award being designated attorneys' fees, and counsel, receiving only a contingency fee, presumably was not identified as a party to that action. At least, our own ruling affirming the personal injury award does not indicate otherwise (250 AD2d 548, *lv denied* 92 NY2d 817). The judgment provided for postjudgment interest to accrue until payment was made.

The Court of Appeals denied further leave to appeal in the underlying case on December 17, 1998. Edelman thereafter served demands for payments. These demands also are not included in the appellate record, so that we cannot see how they are characterized, who were identified as judgment creditor and judgment debtor, and whether further information about these accounts was provided. Relying for present purposes on the text of the decision under review and on the Edelman firm's complaint in the present action, it seems that counsel provided a copy of the judgment and a letter demanding immediate payment. The first demand allegedly was made by Martin Edelman, Esq., on December 22, 1998, a Tuesday,

on MABSTOA's trial counsel, Jeffrey Samel, Esq. On the following day, December 23, Edelman apparently faxed a letter (also not in the record) to Samel specifying the amounts due and stating how the checks should be cut. Presumably, Edelman did not identify himself or his firm as a judgment creditor, but simply provided that the check to his firm be cut from proceeds. In any event, Edelman demanded payment from MABSTOA by December 28, 1998 (i.e., the following Monday) on threat of filing restraining notices and commencement of collection proceedings. It cannot escape anyone's notice that this transpired over the extended Christmas weekend.

Edelman's complaint alleges that on December 28, one of its attorneys, Edward Blithorn, asked George Sawaya, Assistant General Counsel of MABSTOA, when it would receive payment on the judgment. Allegedly, Mr. Sawaya indicated that it usually takes 30 days to make payment on a judgment. Nowhere is it contended that MABSTOA did not intend to pay the judgment. Allegedly, Blithorn asked for payment within two weeks to avoid collection. Allegedly, these persons spoke again the next day, and again on an unspecified date, in which this same information was relayed. In any event, on December 29, 1998, Edelman allegedly issued two executions in the amounts designated for Salles and Edelman, respectively. These documents also are not included in the appellate record. Allegedly, also on December 29, 1998, Blithorn served present defendant Chase Manhattan Bank with a restraining notice and information subpoena with questions and answers seeking information regarding accounts in which MABSTOA as a judgment debtor may have an interest. This document is not included in the appellate record. On December 30, 1998, Chase was served with two sheriff's levies, apparently in connection with the Schneider judgment, with property executions. This was Wednesday of Christmas week, the day before New Year's Eve. These documents also are not included in the appellate record so that we cannot determine how the judgment debtor was identified. In any event, allegedly they were stamped by an unidentified Chase employee with a statement that "A search of our records indicates that there is no account in the name of the judgment debtor." Again, Edelman's appellate record includes no documentation regarding the necessary specifics. On New Year's Eve, December 31, 1998, Blithorn apparently had a conversation with a Chase employee who indicated that MABSTOA maintained only one account with Chase and that the account had no balance. Assuming, solely for the present analysis, the veracity of these allegations, this was clearly a mistake.

Considering the date (and the fact that time of day is not specified), the fact of the mistake should be evaluated in a reasonable perspective. Edelman can hardly argue a real fear that MABSTOA would default on an obligation, or that it was a shell organization maintaining a shell account. Prudence would have warranted Blithorn, or some other Edelman attorney, waiting until after the new year to sort out an obvious mistake.

The majority urges that this conclusion addresses an evidentiary issue rather than the pleadings. However, for purposes of pleading fraud in this case, the issue is not whether the response was wrong; I am simply noting that it was obviously wrong. The issue is whether it was intentionally wrong with the intent to deceive. The pleadings in this regard must be supported by some nonconclusory indication of this. I conclude that they do not.

In any event, on January 4, 1999, the Monday following the holiday weekend, Martin Edelman allegedly conversed with Gloria Dennery, a Chase Assistant Manager, who allegedly informed Edelman that Chase, pursuant to instructions from MABSTOA, was making payment to the Schneider plaintiffs and that Chase could not honor the restraining notices or sheriff's levy and execution with regard to payment to counsel unless MABSTOA authorized the payment. This allegation is not grounded in any documentation memorializing the conversation in any authoritative manner. Edelman contends that it then wrote to Dennery—this letter also is not included in the record—advising Dennery that Edelman would not issue a release of the restraining notice held against MABSTOA unless the entire Schneider award plus expenses incurred by the restraining notice were paid in full. A supplemental amended restraining notice and information subpoena allegedly was served on Chase the following day identifying various MABSTOA accounts at Chase.

On January 7, 1999, present plaintiff Edelman and nominal present plaintiff Salles commenced the present special proceeding against MABSTOA seeking an order of mandamus to make full payment. Additional sheriff's levies and amended executions with notice to garnishee regarding any MABSTOA accounts at Chase were served on January 11, 1999. On that date, Dennery identified a MABSTOA account holding sufficient funds to satisfy the Schneider judgment. On January 14, 1999—a mere three weeks after the first alleged conversation, and only a few days after restraining notices were filed, a time period that incorporated an extensive holiday period—two checks were delivered to Edelman satisfying the entire Schnei-

der judgment. One check was payable to Edelman & Edelman, and the other was payable to Salles. Both included postjudgment interest. Hence, within 28 days after the Court of Appeals denied leave to appeal the underlying judgment, the entire judgment was satisfied. This cannot be construed in any manner to be an inordinate amount of time under the circumstances.

The present action against Chase was filed on or about July 14, 2000. The several causes of action are set forth in the decision of the motion court and as to dismissal of most of them I join with my colleagues in the majority and would affirm. We differ on the disposition of the fraud count against Chase. Allegedly, counsel incurred an additional $100,000 in fees and seeks $50,000,000 punitive damages relating to that short wait. Edelman claims these expenditures and the need for punitive damages resulted from Chase's misrepresentations made "with the intention of inducing Plaintiffs to rely on them and thereby be impeded and delayed in their attempts to enforce and collect the Schneider Judgment against them and from Chase's valuable customers MABSTOA and NYCTA." This claim is implausible, conclusory and unsupported.

Edelman's legal authority in support of its claim to standing is as deficient as its record support for its factual averments. As counsel, its privity was with the client, and not with the bank. Just as the obligation of the bank on behalf of MABSTOA to pay the judgment ran to the client, to whom it may be liable in negligence in failing to comply with a restraining order (*see Leber-Krebs, Inc. v Capitol Records*, 779 F2d 895), the obligation for attorneys' fees ran from the client to the attorney, and not from the bank to the attorney, notwithstanding the convenience of cutting the checks as presumably specified in the judgment (which, as noted, is missing from the record). Salles, on behalf of Schneider, was the judgment creditor. Edelman was not a judgment creditor, but only counsel, entitled to a contingency fee, payable by the contracting party—Salles. Needless to say, the retainer agreement also is not provided in the appellate record, so that we cannot ascertain what efforts by counsel were contractually included in the contingency fee. If Edelman precipitously and improvidently commenced collection proceedings under the circumstances of this case, that exercise of judgment should not be used to extract moneys from Chase in excess of that specifically provided for in the judgment. Edelman's role in litigating the case and recovering the award was limited to that of counsel; it did not thereby acquire any greater rights vis-à-vis the judgment debtor and

its bank merely by virtue of being only counsel. Notably, with respect to the amount in judgment, everyone was paid, with interest to the date of satisfaction of the judgment, within a short time period, so that it is hard to see how counsel enjoys any basis let alone standing to recover seemingly excessive fees for what I would submit is frivolous litigation under the circumstances of this case.

Even though I find that Edelman lacked standing to sue, its fraud claim is also subject to dismissal for failure to state a cause of action. A fraud claim (CPLR 3016 [b]) requires detailed and specific pleading. The elements of fraud that must be specifically pleaded are misrepresentation of material fact, falsity, knowledge, intent to deceive, reliance and damages (*Caniglia v Chicago Tribune-New York News Syndicate*, 204 AD2d 233). These elements are insufficiently pleaded. With respect to payment of the contingency fee in connection with the Schneider judgment, counsel was paid with appropriate interest, so there are no damages. In connection with counsel's subsequent and, it would seem, unnecessary litigation to collect on that judgment, counsel must demonstrate that collection responsibilities were not included in the retainer agreement. Edelman fails to plead that the retainer agreement excluded counsel's efforts, and fails even to include a copy of the agreement with the record. Hence, the precise basis for the alleged injury is not pleaded. Moreover, Edelman makes only conclusory allegations of fraudulent intent. Hence, this claim also warranted dismissal.