■ Guido Beck, Respondent, v Stefan Eins, Appellant. [762 NYS2d 29] —Order, Supreme Court, New York County (Charles Ramos, J.), entered June 21, 2001, which, to the extent appealed from, granted plaintiff's motion for summary judgment on his claim of fraudulent inducement and awarded plaintiff $27,883.23 for defendant's proportionate share of common building expenses, unanimously reversed, on the law, without costs or disbursements, the motion for summary judgment denied and a recalculation of damages as to common building expenses directed.

In August 1995, plaintiff, through a European newspaper advertisement, learned that defendant was offering to sell a two-story loft apartment in an upper Manhattan building, a five-story townhouse in need of renovation leased by defendant. Defendant's lease contained an option to purchase the building for $50,000 to be financed by a purchase-money mortgage. After contacting defendant in response to the advertisement, plaintiff came to New York to see the building. According to plaintiff's deposition testimony, defendant asked plaintiff "to give me * * * $20,000 for * * * ownership rights to the upstairs duplex apartment/loft * * * in a legal structure that was not determined at that point." Later, the parties agreed to create 2048 Madison Avenue Corporation as a vehicle to purchase the premises, subsequently acquired in January 1996.

On January 16, 1996, the parties executed an agreement that transferred to plaintiff ownership of a 40% interest (80 shares) in the corporation, representing the top two floors of the building. Insofar as is relevant, the agreement further provided: "We agree that [defendant] shall be permitted to sell the bottom two floors comprising 40% of all shares of the building (80 shares) or the parlor floor (20% = 40 shares) at my discretion. In case I elect to sell my entire interest (60% = 120 shares), [plaintiff's] approval will be necessary." The agreement further confirmed that the building had three units, two

top floors (40% of shares), parlor floor (20% of shares), two bottom floors (40% of shares) and that "[e]very shareholder will have a proprietary lease to the floor(s) he owns and occupies." Article VI of the bylaws, which, apparently, both parties drafted, stated that "[s]hares of stock of the corporation shall be issued only in connection with the execution and delivery by the purchaser and the corporation of a proprietary lease of an apartment in the building * * * and the ownership of said shares * * * shall entitle the holder thereof to occupy for dwelling purposes the apartment specified in the proprietary lease." Plaintiff did not receive any stock certificates, although defendant did. Thereafter the parties began to renovate their individual apartments as well as the common areas of the building. In March 1996, according to plaintiff, defendant ceased working on the common areas and stopped contributing to the payment of the building's expenses. As a consequence, plans to obtain a certificate of occupancy were delayed.

Later that year, defendant, apparently short of money, sold to plaintiff for $15,000 the "garden duplex apartment" and an additional 30% of the corporation's stock and the proprietary lease allocated thereto, although the relevant documents were never delivered. The money was to be deposited in the corporate checking account to secure defendant's payments of common expenses and completion of the renovations. Plaintiff maintains that defendant wasted funds in the corporate checking account, and that he had to advance funds to cover defendant's share of payments for the mortgage, real estate taxes, insurance and other corporate expenses.

With the deterioration in the parties' relationship, plaintiff commenced the instant action, individually and on behalf of the corporation, asserting causes of action against defendant for fraud in the sale of the loft and garden apartment based on a false representation as to the building's status as a cooperative, securities law violations, failure to deliver a stock certificate and proprietary lease for the garden apartment, breach of fiduciary duty, refusal to complete renovations essential to obtaining a certificate of occupancy and diversion of corporate assets. Plaintiff also sought judicial dissolution of the corporation. Defendant counterclaimed for, inter alia, breach of contract, defamation, harassment and "outrageous conduct."

After extensive discovery and the taking of depositions, the parties moved and cross-moved for summary judgment on their claims and cross claims. Plaintiff argued that "since purchasing [the stock], [I] discovered for the first time that * * * [d]efendant had not [prepared or filed], and had no intention of

preparing or filing[,] a plan for the conversion of the [p]remises to a cooperative." The IAS court granted plaintiff summary judgment on the fraud claim, concluding, that "[d]espite the unsupported statements to the contrary, the submitted proofs and the framework of the ownership [of the building] support a finding that [plaintiff] was deceived" into believing that the building was a legal cooperative. As a remedy, the court directed defendant, at his own expense, to obtain "approval of the attorney general for the proper conversion of the building into a legal cooperative apartment complex." The court also awarded plaintiff $27,883.23 in damages, representing the proportionate share of common building expenses that plaintiff had advanced for several years on defendant's behalf. We reverse.

The IAS court erred in concluding that plaintiff had conclusively established that apartments were sold to him "as being cooperative in nature" since questions of facts exist as to whether plaintiff's reliance on defendant's alleged false representations was reasonable (*Salles v Chase Manhattan Bank*, 300 AD2d 226, 228 [2002]). "Cooperative corporations are a special form of ownership of real property" (19A NY Jur 2d, Condominiums and Cooperative Apartments § 140). An interest in a cooperative corporation is represented by shares of stock and a proprietary lease entitling the shareholder to occupy a particular apartment in the building (*see id.*). An apartment may not be sold as a cooperative without compliance with the provisions for offerings of real estate securities under General Business Law § 352-e.

There is no question that the 1996 agreement, which defendant presented to plaintiff for signature, referred to plaintiff's purchase of 40% of the shares as "representing an ownership interest of the top two floors" and stated that every shareholder would have a "proprietary lease to the floor(s) he owns and occupies." By the use of such language, it appears that defendant was falsely conveying the impression that the building was held in a cooperative form of ownership. When, however, plaintiff was asked at his deposition what he did "to satisfy [him]self that this was a co-op," he responded, "Basically I relied on your [defendant's] statements." Plaintiff later acknowledged that he had never seen an offering plan for the building and that he had "satisf[ied] [him]self that this was a co-op" by "trust[ing]" defendant.

At his deposition, plaintiff was referred to the following paragraph in the January 1996 agreement: "No filings of any documents prepared in connection with this transaction have

been made with any agency of government nor have any approvals been obtained nor is [there] any such submission of the documents prepared in connection herewith to any agency of government for approval," and acknowledged that he had signed the agreement. It is, however, not clear from the context of the agreement whether the quoted paragraph dealt only with the parties' responsibilities for installations and maintenance at the premises or whether this provision could be interpreted as demonstrating that no attempts had been made to obtain governmental approval for a conversion to cooperative status. The agreement refers as much to maintenance duties and obligations as it does to corporate structure. Moreover, as defendant points out, prior to the creation of the corporation and the purchase of the building plaintiff saw it unoccupied and in need of renovation. As defendant also observes, the fact that the title search revealed that the building had many violations made it unlikely that it was a co-op. A question of fact is presented as to the extent of plaintiff's reliance and the reasonableness thereof.

Defendant, who does not contest that he is in arrears for the common expenses, argues that the award of $27,883.23 is based on documentation that was deficient. As an example, in a supplemental affirmation providing a detailed list of expenditures, plaintiff claimed an expense of $5,375 under the "renovation of roof/chimney" category for work performed by a Mr. Dimitry Lesane. The three receipts offered as proof, however, showed that Lesane was paid the sum of $537.50, not $5,375, as claimed.

Thus, the grant of summary judgment on the fraud claim should be denied and the amount of arrears due by defendant on common expenses should be recalculated. Concur—Mazzarelli, J.P., Sullivan, Lerner, Friedman and Gonzalez, JJ.