[939 NYS2d 384]

Howard Kagan, Appellant-Respondent, v HMC-New York, Inc., et al., Respondents-Appellants.

First Department, February 28, 2012

### APPEARANCES OF COUNSEL

*Lowenstein Sandler PC*, New York City (*David L. Harris*, of the bars of the State of New Jersey and Commonwealth of Pennsylvania, admitted pro hac vice, and *Steven M. Hecht* of counsel), for appellant-respondent.

*Paul, Weiss, Rifkind, Wharton & Garrison LLP*, New York City (*Walter Rieman, Leslie Gordon Fagen* and *Nathaniel E. Marmon* of counsel), for respondents-appellants.

**OPINION OF THE COURT**

CATTERSON, J.

In this action, we are asked to determine, inter alia, whether the plaintiff's claims for breach of contract can stand against defendant managers whose potential liability is circumscribed by the language of the contract, and whether his claims for breach of fiduciary duty should be reinstated under Delaware law. The plaintiff, Howard Kagan, seeks to recover amounts allegedly owed in connection with his work for an investment firm, HMC-NY, and his equity holding and membership interest in Harbinger Capital Partners GP, LLC (hereinafter referred to as the Onshore Manager) and Harbinger Capital Partners Offshore Manager, LLC (hereinafter referred to as the Offshore Manager) (collectively hereinafter referred to as the Manager Entities or Company). He alleges that defendants, HMC Investors, LLC, HMC-New York, Inc., and Harbinger Holdings, LLC, as managers of the Manager Entities, violated the controlling agreements of both entities which are governed by Delaware Law.

Specifically, he alleges breach of sections 4.5 (d) and 8.7 of both agreements in that the defendant managers failed to properly calculate the amounts due to him in respect of 2007 withheld amounts, and to pay him such amounts within 30 days after his termination without cause, and that they failed to pay him his prorated share of the Manager Entities' performance compensation for 2008 by no later than March 31, 2009. Additionally, in respect of his equity holding and membership interest in the Offshore Manager, he alleges breach of section 4.6 of the Offshore agreement by defendants HMC Investors (and/or Harbinger Holdings) for making certain unauthorized deferrals of amounts owed to Offshore Manager.

The plaintiff also alleges breach of the implied covenant of good faith and fair dealing in that the defendant managers, inter alia, willfully refused to pay amounts that they allegedly acknowledged are due and owing to him under the terms of the agreements. Lastly, he alleges a breach of fiduciary duty.

As a threshold matter, it is undisputed that the managers, HMC-NY, HMC Investors, and Harbinger Holdings, are not contractually obligated to the plaintiff with respect to the provisions allegedly breached. In each instance, the provisions specify that the obligation rests with the Company, that is, the Manager Entity. However, the plaintiff asserts that, nevertheless, the defendants are not entitled to dismissal of the breach of contract

claims. Instead, relying on *Kuroda v SPJS Holdings, L.L.C.* (971 A2d 872 [Del Ch Ct 2009]), the plaintiff argues that the "defendants have the authority to control the Manager Entities, and the [a]greements do not explicitly exempt them from liability under the circumstances alleged here."

■ We disagree. Whatever the extent of their authority and control, the defendants as managers are exempt from liability under the "circumstances alleged here," which are the factual allegations underlying the first and second causes of action in breach of contract.

Section 7.10 ("Limitation of Liability") of the agreements provides, inter alia:

> "*No Manager* or Officer *shall have any liability* to the Company [the Manager Entities] or *any Member* or Holder for any loss suffered by the Company or any Member or Holder that *arises out of any act or omission by the Manager or Officer*, if such Manager or Officer performs its duty in compliance with the standard set forth in the immediately preceding sentence [to act in good faith, as set forth in § 7.9], *except* loss or damage resulting from intentional misconduct, knowing violation of law, gross negligence or a transaction from which the Manager or Officer received a personal benefit in violation or breach of the provisions of this Agreement" (emphasis added).

Section 7.9 of the agreements sets forth the "[d]uties of [m]anagers," requiring that they "act in good faith and in the best interest of the Company [the Manager Entities] and with such care as an ordinarily prudent person in a like position would use under similar circumstances."

*Kuroda* involved a similar type of action by an employee of an investment firm. One of the provisions of the operating agreement purporting to limit liability stated that managers/members will not be held liable for "mistakes, action or inaction [unless they] arise out of . . . gross negligence, willful misconduct or bad faith." (*Kuroda*, 971 A2d at 882.)

The *Kuroda* court simply found that the defendant managing members "have not argued that they are exculpated from liability under the terms of this section." (*Kuroda*, 971 A2d at 882.) This case presents the opposite scenario; the defendant managers argue strenuously that they are exempt from liability under the terms of the limitation of liability provisions of both operating agreements.

The language of the agreements' exculpatory clauses in both *Kuroda* and this case reflects that, as a matter of public policy and "longstanding general common-law principles" an LLC operating agreement may not limit liability for *tortious* conduct. (*TIC Holdings v HR Software Acquisitions Group*, 301 AD2d 414, 415 [1st Dept 2003]; *see also e.g.* Limited Liability Company Law § 417 [a] [1].) But, there is no tortious conduct alleged in this case.

Instead, the defendant managers correctly assert that the plaintiff's allegations in the first and second causes of action are for breach of certain specific contractual provisions dealing with the deferral, withholding and calculation of the plaintiff's payments, and the obligation to make those payments within 30 days of termination. The plaintiff's allegations of a breach of the implied covenant of good faith and fair dealing arise from the same contractual provisions. The plaintiff's allegation is that, based on those contractual provisions, certain of the defendants allegedly acknowledged that they owe the plaintiff a part of the monies he seeks. Therefore, he claims there exists an implied obligation to pay at least that amount by a certain date as well as an implied obligation to ensure a sufficiency of funds to make the payments.

The plaintiff does not allege any breach by the defendants of their duty to "act in good faith and in the best interest of the [c]ompany" pursuant to section 7.9. Absent such an allegation, the defendant managers' liability is limited only to specific tortious acts—intentional misconduct, a knowing violation of the law, gross negligence and self-dealing; none of which the plaintiff alleges against them.

As much as we are obligated to accept all allegations as true on a CPLR 3211 motion to dismiss (*Salles v Chase Manhattan Bank*, 300 AD2d 226, 228 [1st Dept 2002]), in this case the plaintiff simply does not make any allegations at all that fall within the exclusions of the liability limitation provision. As the defendants correctly assert, under Delaware law, a breach of contract claim is not an allegation of intentional misconduct, knowing violation of law, gross negligence or self-dealing. (*See Nolu Plastics, Inc. v Ledingham*, 2005 WL 5654418, *2 [Del Ch Ct 2005] [intentional misconduct refers to acts of wrongdoing such as fraud and conversion and is distinguished from breach of contract].) As such, neither the willful conduct or the bad faith alleged in the first and second breach of contract causes of action constitutes the act of intentional misconduct that is referred to in the "limitation of liability" provision.

■ The plaintiff's breach of fiduciary duty causes of action were correctly dismissed. As the motion court, relying correctly on Delaware law, noted, when "[t]he same facts that underlie [a plaintiff's] contract claim also form the basis of [plaintiff's] fiduciary claim," the fiduciary claim is precluded. (*See Gale v Bershad*, 1998 WL 118022, *5, 1998 Del Ch LEXIS 37, *19 [1998]; *HB Korenvaes Invs., L.P. v Marriott Corp.*, 1993 WL 205040, 1993 Del Ch LEXIS 90 [1993]; *accord William Kaufman Org. v Graham & James*, 269 AD2d 171, 173 [1st Dept 2000].) As the motion court further correctly observed, the defendant managers' obligation to properly calculate and distribute monies owed to the plaintiff arises out of the LLC agreements. Thus, in this case, the plaintiff's complaint asserts contractual and fiduciary claims that arise from the same alleged facts and underlying conduct. Since the fiduciary claims are substantially identical to the breach of contract claims they were properly dismissed. (*See Nemec v Shrader*, 991 A2d 1120, 1129 [Del 2010].) Moreover, resurrecting them, as the dissent urges, would simply and impermissibly allow the plaintiff to plead his breach of contract claims under a different guise.

In any event, the dissent's view that Delaware law requires *explicit* elimination or restriction of fiduciary duties otherwise such duties apply by default, appears to be based on the belief that "explicit" requires such elimination or restriction to be written into an agreement in haec verba. However, section 7.9 of the agreement sets forth, in relevant part, the duties of the managers as: "The [m]anagers shall act in good faith and in the best interest of the Company." Section 7.10 in turn expressly limits the liability of the managers who act in accordance with that standard set forth in section 7.9. As the defendants correctly assert, with these provisions the agreement imposes only specific limited contractual obligations on the managers, thus eliminating the traditional fiduciary duties imposed under Delaware law; expressio unius est exclusio alterius.

The dissent's reliance on *Kelly v Blum* (2010 WL 629850, 2010 Del Ch LEXIS 31 [2010]), is misplaced. *Kelly* does not stand for the proposition that, without specific elimination, such contractual provisions cannot eliminate fiduciary duties that would exist under common law. Section 7.9 of the agreement at issue in *Kelly*, clearly refers to liability arising, inter alia, out of a "willful breach of [the Managers'] contractual *or* **fiduciary duties**" (2010 WL 629850, *11, 2010 Del Ch LEXIS 31, *46 [additional emphasis added]). It makes sense

then that the *Kelly* court found that "the parties intended traditional fiduciary duties to apply." (*Id.*) No such reference to the fiduciary duties of managers appears in the applicable section 7.10 in this case. On the contrary, it is explicitly omitted. Finally, in the absence of a viable claim for breach of fiduciary duty, the related claims of aiding and abetting such a breach were also properly dismissed. It should be noted that, of course, notwithstanding the foregoing, and to the extent that the issue is not raised on appeal, the plaintiff's breach of contract claims against the Manager Entities have survived.

Accordingly, the order of the Supreme Court, New York County (Richard B. Lowe, III, J.), entered June 7, 2010, which, insofar as appealed from as limited by the briefs, granted defendants' motion to dismiss plaintiff's claims for breach of fiduciary duty, and aiding and abetting breach of fiduciary duty and denied the motion seeking dismissal of plaintiff's breach of contract claims against HMC Investors, LLC, HMC-New York, Inc. and Harbinger Holdings, LLC, should be modified, on the law, to the extent of granting the motion to dismiss plaintiff's breach of contract claims as against the foregoing defendants, and otherwise affirmed, with costs. The Clerk is directed to enter judgment dismissing the complaint as against HMC Investors, LLC, HMC-New York, Inc. and Harbinger Holdings, LLC. The order of the same court and Justice, entered September 22, 2010, which, insofar as appealed from, denied plaintiff's motion for leave to renew defendants' motion to dismiss, should be affirmed, with costs.

Moskowitz, J. (dissenting in part). This appeal requires a detailed examination of Delaware's law on limited liability corporations. While I agree with the majority that it was error for the motion court not to dismiss plaintiff's claims for breach of contract against certain defendants, I would retain the breach of fiduciary duty claims. There is no question that Delaware law controls all issues on this appeal.

This is a dispute between a member of two LLCs and the manager-members of those LLCs. Plaintiff Howard Kagan seeks to recover amounts allegedly owed for his work for an investment firm, HMC-NY and for his equity holding and membership interest in Harbinger Capital Partners GP, LLC (Onshore Manager) and Harbinger Capital Partners Offshore Manager, LLC (Offshore Manager).

Plaintiff aims his complaint at a wide swath of defendants: HMC-NY, Onshore Manager, Offshore Manager, Harbinger

Capital Partners Fund I, LP (Onshore Fund), Harbinger Capital Partners Offshore Fund I, Ltd (Offshore Fund), HMC Investors, Harbinger Holdings, LLC, Philip Falcone, Raymond Harbert and Michael Luce, William Brooke, Charles Miller, David Boutwell, Joel Piassick, Michael White, Carole Schafer, Lawrence Clark, Kathleen Murphy, Ian Estus, Raymond Jones Harbert Accumulation Trust U/A 12/22/99, Mary Kathryn Harbert Accumulation Trust U/A 12/22/99, John Murdoch Harbert II Accumulation Trust U/A 12/22/99, and John and Jane Does.

Plaintiff claims that in March of 2003 he began to provide consulting services to HMC-New York. In November 2004, he became a Vice-President and Director of Investments. In 2006, plaintiff became a member of the Onshore Manager and the Offshore Manager. These entities managed the Onshore Fund and the Offshore Fund. In turn, defendants HMC Investors, LLC, HMC-New York, Inc. and Harbinger Holdings, LLC (collectively the member managers), were members in and allegedly managed the Offshore Manager and the Onshore Manager.

As a holder of membership interests in the Offshore Manager and the Onshore Manager (collectively the manager entities), plaintiff was to receive a portion of the manager entities' performance compensation. Pursuant to plaintiff's interpretation of the restated and amended limited liability company agreements (the LLC agreements) governing the manager entities, the amount plaintiff was to receive allegedly rose and fell on the performance of the Onshore Fund. Plaintiff alleges that the LLC agreements further provide that these amounts are "fixed and no longer subject to such increase or decrease once such amounts vest in connection with an involuntary termination of plaintiff's relationship with [the Harbert Defendants[1]] without cause." On August 27, 2008, defendant Falcone terminated plaintiff's relationship with the Harbert Defendants.

According to plaintiff, in addition to the amounts that vested in 2007, the LLC agreements also provide that the manager entities "are required to pay to [plaintiff] amounts equal to his pro rated share of the performance compensation of the [m]anager [e]ntities for 2008, the year in which such termination occurred." Plaintiff claims that $62,141,783 is owed to him under the LLC agreements and that defendants have acknowledged they owe plaintiff at least $36.5 million.

---

**1.** HMC-NY, Onshore Manager, Offshore Manager, Onshore Fund, Offshore Fund, HMC Investors and Harbinger Holdings, LLC collectively are the "Harbert Defendants."

Plaintiff asserted the following causes of action in his complaint: (1) and (2) breach of contract and implied covenant of good faith and fair dealing against, inter alia, the member managers, under the LLC agreements;[2] (3) unjust enrichment against the individual defendants and John and Jane Doe defendants; (4) constructive trust against all defendants; (5) and (6) breach of fiduciary duty against the member managers; and separate counts, (7), (8) and (9), for aiding and abetting a breach of fiduciary duty against various other defendants.

The contract claims allege that the manager members failed to pay amounts due under the LLC agreements. Plaintiff also complains that defendants claim they have the right to pay plaintiff in the form of illiquid securities valued with allegedly questionable methodology. Finally, plaintiff complains that the member managers have failed to ensure that sufficient assets are available to pay plaintiff.

The breach of fiduciary duty claims are similar in large part. They allege that the member managers (1) purposefully failed to pay plaintiff amounts they acknowledged to be owed; (2) conditioned payment of acknowledged amounts owed on plaintiff's signing a release and waiver of certain rights; (3) claimed to have the right to pay plaintiff more than $12 million in a form of securities which may have had an unrealizable value; (4) failed to properly calculate amounts owed; and (5) failed to ensure that sufficient assets would be available to pay plaintiff.

Defendants moved, inter alia, to dismiss the breach of contract claims as against the member managers, and to dismiss the remainder of the complaint in its entirety. The motion court denied the portion of the motion that sought dismissal of the breach of contract claims against the member managers (2010 NY Slip Op—[U] [2010]). Because the duty plaintiff sought to enforce essentially arose out of the LLC agreements, the motion court dismissed the claims for breach of fiduciary duty as duplicative of the breach of contract claims. The motion court also dismissed the claims for unjust enrichment and constructive trust, but denied that portion of the motion seeking to dismiss the complaint against certain nondomiciliary defendants for lack of personal jurisdiction.

Plaintiff moved for leave to reargue and renew the motion to dismiss in order to reinstate the claims the motion court

---

2. Plaintiff has sued the manager entities for breach of contract as well. This claim survives and is not an issue on this appeal.

dismissed. Plaintiff claimed that, through discovery, he learned that in 2009 the manager entities distributed millions of dollars to others while failing to retain sufficient assets to pay plaintiff. Plaintiff contended that this conduct constituted a breach of fiduciary duty. The motion court denied the motion to renew. Plaintiff appealed from that part of the order that granted defendants' motion to dismiss the claims for breach of fiduciary duty. Defendants cross-appealed from that part of the order that denied their motion to dismiss plaintiff's claims for breach of contract against the member managers. Plaintiff also appealed from the denial of his motion for leave to renew.

Because the member managers do not have responsibility for carrying out the provision for which plaintiff claims breach, I agree with the majority that the motion court erred in not dismissing the claims for breach of contract. However, a Delaware court would not have dismissed the breach of fiduciary duty claims against the member managers, who, as controlling members of the LLC's at issue, clearly had a fiduciary relationship to plaintiff that the LLC agreements did not eliminate.

I. Breach of Contract

I agree that the motion court erred in retaining the claims for breach of contract against the member managers. The member managers do not have an obligation under the specific contract provisions under which plaintiff claims breach and the exceptions to the exculpatory clause do not include a cause of action for breach of contract (*see Data Mgt. Internationalé, Inc. v Saraga*, 2007 WL 2142848, *5, 2007 Del Super LEXIS 412, *17 [2007] ["(p)arties . . . may reasonably anticipate and address the risks associated with negligence through an exculpatory clause without anticipating an intentional tort which violates a duty independent of the contract"]). Accordingly, the motion court erred in retaining the breach of contract claims when it determined that they fell within the exception to the exculpation clause.

Plaintiff argues that *Kuroda v SPJS Holdings, L.L.C.* (971 A2d 872 [Del Ch Ct 2009]) stands for the proposition that managing members who are signatories to LLC agreements and who possess authority to conduct the business affairs of LLCs can be liable for breach of contract for failing to pay a nonmanaging member amounts owed under the LLC agreement. *Kuroda* is different. The LLC agreement in *Kuroda* contained a section, "§ 1.06," that reads:

> "Except as otherwise expressly provided in the Delaware Act, the debts, obligations and liabilities of

the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and no Member shall be obligated personally for any such debt, obligation or liability of the Company *solely by reason of being a Member*" (*id.* at 881 [emphasis supplied]).

Delaware Chancellor Chandler reasoned that the language "solely by reason of being a [m]ember" did "not limit liability for reasons other than status as a member" (*id.* at 882). The LLC agreements at issue here do not contain language of this sort.

## II. Good Faith and Fair Dealing

As discussed, the motion court improperly sustained the breach of contract causes of action against the member managers. This cause of action contained within it a claim for breach of the implied covenant of good faith and fair dealing. The Delaware Limited Liability Company Act prohibits an LLC agreement from eliminating liability "for any act or omission that constitutes a bad faith violation of the implied contractual covenant of good faith and fair dealing" (Del Code Ann, tit 6, § 18-1101 [e]). Thus, the limitation of liability provision cannot operate to waive this cause of action.

"The implied covenant [of good faith and fair dealing] functions to protect stockholders' expectations that the company and its board will properly perform the *contractual* obligations they have under the operative organizational agreements" (*Wood v Baum*, 953 A2d 136, 143 [Del 2008]). "To state a claim of breach of the implied covenant of good faith and fair dealing, a party must allege [1] a specific implied contractual obligation, [2] a breach of that obligation by the defendant, and [3] resulting damage to the plaintiff" (*Kelly v Blum*, 2010 WL 629850, *13, 2010 Del Ch LEXIS 31, *59 [2010] [internal quotation marks omitted]). General allegations of bad faith are insufficient. To state a cognizable claim, "[a] plaintiff must allege a specific implied contractual obligation and allege how the violation of that obligation denied the plaintiff the fruits of the contract" (*Kuroda*, 971 A2d at 888). Despite the inability to waive this cause of action, it is the rare plaintiff who can invoke the implied covenant successfully (*id.*).

Here, plaintiff fails to allege any specific implied contractual obligation or draw a sufficient connection between alleged violations of the covenant and a specific implied obligation in the

contract. Hence, it was proper to dismiss this claim (*see Kelly*, 2010 WL 629850, \*14, 2010 Del Ch LEXIS 31, \*59-60; *Kuroda*, 971 A2d at 888).

## III. Breach of Fiduciary Duty

Section 7.10 in the LLC agreements states:

> "No Manager or Officer shall have any liability to the Company or any Member or Holder for any loss suffered by the Company or any Member or Holder that arises out of any act or omission by the Manager or Officer, if such Manager or Officer performs its duty in compliance with the standard set forth in the immediately preceding sentence, except loss or damage resulting from intentional misconduct, knowing violation of law, gross negligence or a transaction from which the Manager or Officer received a personal benefit in violation or breach of the provisions of this Agreement."

The "immediately preceding sentence" section 7.10 refers to is section 7.9, entitled "Duties of Managers": "The Managers shall act in good faith and in the best interest of the Company and with such care as an ordinarily prudent person in a like position would use under similar circumstances." Under the Delaware LLC statute, with the exception of a violation of the implied covenant of good faith and fair dealing, an LLC agreement "may provide for the limitation or elimination of any and all liabilities for breach of contract and breach of duties (including fiduciary duties)" (Del Code Ann, tit 6, § 18-1101 [e]). Defendants argue that section 7.9 replaces the managers' fiduciary duty that would otherwise exist under common law with a contractual one. Hence, according to defendants, plaintiff cannot assert a cause of action for breach of fiduciary duty whatsoever.

Delaware law does not support defendants' interpretation. *Kelly v Blum* (2010 WL 629850, 2010 Del Ch LEXIS 31 [2010], *supra*) involved similar provisions to the LLC agreements' sections 7.9 and 7.10. The section of the agreement in *Kelly* that paralleled section 7.9's "Duties of Managers," was entitled "Duties" and stated, in pertinent part, "[t]he Board of Managers shall manage the affairs of the Company in a prudent and businesslike manner" (2010 WL 629850, \*11, 2010 Del Ch LEXIS 31, \*46). Similar to the LLC agreements' section 7.10, the limitation of liability provision in *Kelly* stated:

> "[i]n carrying out their duties hereunder, the Managers shall not be liable for money damages **for**

**breach of fiduciary duty to the Company nor to any Member** for their good faith actions or failure to act . . . but only for their own willful or fraudulent misconduct or willful breach of their contractual or **fiduciary duties** under this Agreement" (2010 WL 629850, \*11, 2010 Del Ch LEXIS 31, \*46-47).

The court in *Kelly* held that these provisions failed to eliminate traditional fiduciary duties "[b]ecause no clause in the [contract] explicitly restricts or eliminates the default applicability of fiduciary duties" (2010 WL 629850, \*11, 2010 Del Ch LEXIS 31, \*48; *see also Pappas v Tzolis*, 87 AD3d 889, 893 [2011]).

Here too, no clause in the LLC agreements explicitly restricts or eliminates the fiduciary duties that exist at common law. The parties do not dispute that member managers would traditionally owe fiduciary duties to nonmanaging members. Thus, as the LLC agreements do not explicitly eliminate these traditional fiduciary duties, they remain to the extent they do not duplicate a claim for breach of contract or fall within the terms of an exculpatory clause.

Plaintiff alleges that, among other things, defendants purposefully failed to ensure that sufficient assets were available to pay him, primarily by distributing to others assets that defendants should have used to pay plaintiff. These allegations are sufficient to support a claim for breach of fiduciary duty (*see Schuss v Penfield Partners, L.P.*, 2008 WL 2433842, \*10, 2008 Del Ch LEXIS 73, \*34 [2008] [method general partner used to determine distribution amounts may have violated fiduciary duties]; *see also Kelly*, 2010 WL 629850, \*11, 2010 Del Ch LEXIS 31, \*48 [breach of fiduciary duty to profit from premeditated scheme to squeeze the plaintiff out of the LLC]; *Anglo Am. Sec. Fund, L.P. v S.R. Global Intl. Fund, L.P.*, 829 A2d 143, 157 [Del Ch Ct 2003] [withdrawal made during time fund was sustaining significant losses may indicate bad faith sufficient to sustain a breach of fiduciary duty claim]).

Even if plaintiff alleged facts that, if true, would be sufficient to show that defendants breached their fiduciary duties, these claims would not be sustainable if they merely duplicated a claim for breach of the contractual duties that the LLC agreements place on the manager entities (*see Nemec v Shrader*, 991 A2d 1120, 1129 [Del 2010]). There is some overlap between some of what plaintiff alleges was a breach of fiduciary duties

and what he alleges was a breach of contractual duties. However, plaintiff's allegations that the member managers breached their fiduciary duty by failing to ensure sufficient assets were available to pay plaintiff and by transferring assets to other members of the manager entities that they should have used to pay plaintiff are sufficiently outside the contract to sustain a claim for breach of fiduciary duty (see Schuss, 2008 WL 2433842, *10, 2008 Del Ch LEXIS 73, *34). These allegations claim manipulation of a position of control to ensure that plaintiff would not receive his due under the contract and a scheme to benefit at plaintiff's expense. At this early pleading stage, considering the nature of the allegations, it would be inappropriate to dismiss this claim as duplicative of claims for breach of contract. Moreover, the allegations, if true, raise the distinct possibility that the member managers have moved enough funds out of the remaining defendant entities to prevent plaintiff from recovering damages as a practical matter.

However, plaintiff's claims for breach of fiduciary duty face one more hurdle. Even though plaintiff has alleged facts sufficient to show that defendants may have breached their fiduciary duties to him, and even though the allegations do not entirely duplicate plaintiff's claims for breach of contract, defendants might still avoid liability under the exculpatory provision. This provision eliminates liability for everything short of "intentional misconduct, knowing violation of law, gross negligence or a transaction from which the Manager or Officer received a personal benefit in violation or breach of the provisions of this Agreement."

Plaintiff's allegations certainly could fit into the "intentional misconduct" exception to the exculpation provision. Plaintiff has alleged facts suggesting that the member managers knew full well they owed plaintiff considerable amounts under the LLC agreements, but, in response to the economic crisis in late 2008, deliberately withheld or caused the manager entities to withhold payment. These defendants then allegedly used plaintiff's money for themselves and certain other defendants. Because these allegations support a claim that defendants used their position of control over the managing entities to enrich themselves at plaintiff's expense, I would sustain the claims for breach of fiduciary duty (see Schuss, 2008 WL 2433842, *10, 2008 Del Ch LEXIS 73, *34 ["(p)laintiffs conceivably could prove (d)efendants adopted their interpretation in bad faith or as a result of gross negligence or willful misconduct"]).

IV. Aiding and Abetting Breach of Fiduciary Duty

Because the motion court dismissed the breach of fiduciary duty claims, there was no basis to keep the claims for aiding and abetting breach of fiduciary duty. As I would not have dismissed the breach of fiduciary duty claims, it is necessary to analyze the aiding and abetting claims. However, under applicable Delaware law, these claims are not viable.

There appears to be a conflict between New York and Delaware regarding the particulars of a claim for aiding and abetting breach of fiduciary duty. In Delaware, a fiduciary cannot be liable on an aiding and abetting claim. In New York, there is no requirement that defendant be a nonfiduciary (compare *Gotham Partners, L.P. v Hallwood Realty Partners, L.P.*, 817 A2d 160, 172 [Del 2002], with *Kaufman v Cohen*, 307 AD2d 113, 125 [2003]).

Plaintiff, seeking to escape Delaware's requirement that a defendant on an aiding and abetting claim have nonfiduciary status, insists that New York law applies because the underlying conduct took place in New York. However, application of corporate law and the regulation of internal corporate affairs is a matter of interest primarily for the state of incorporation, here Delaware (see *In re American Intl. Group, Inc*, 965 A2d 763, 822 [Del Ch Ct 2009] [even though all relevant conduct occurred in New York, Delaware's policy interest would be paramount]). Thus, Delaware law applies and plaintiff's claims for aiding and abetting fail against defendants Falcone, Harbert and Luce because these defendants were officers of the managing members and therefore were fiduciaries as well.

Tom, J.P., Saxe and Manzanet-Daniels, JJ., concur with Catterson, J.; Moskowitz, J., dissents in a separate opinion.

Order, Supreme Court, New York County, entered June 7, 2010, modified, on the law, to the extent of granting the motion to dismiss plaintiff's breach of contract claims as against the defendants HMC Investors, LLC, HMC-New York, Inc., and Harbinger Holdings, LLC, and otherwise affirmed, with costs. The Clerk is directed to enter judgment dismissing the complaint as against these defendants. Order, same court and Justice, entered September 22, 2010, affirmed, with costs.