■ RICHARD P. FRIEDMAN et al., Respondents-Appellants, v RALPH ANDERSON et al., Appellants-Respondents. [803 NYS2d 514]—

Order, Supreme Court, New York County (Ira Gammerman, J.), entered March 18, 2004, which, in this action for, inter alia, negligent misrepresentation, breach of fiduciary duty and fraud in connection with defendant accountants' recommendation of a professional money manager to plaintiff Friedman, granted defendants Anderson and Eisner's CPLR 3211 (a) (7) motions to dismiss the fourth and fifth causes of action regarding defendants' negligence, as well as the sixth cause of action for breach of fiduciary duty, but denied defendants' motion to dismiss the seventh cause of action for common-law fraud, unanimously modified, on the law, to deny defendants' motions with respect to the fourth and fifth causes of action, and to grant the motion to dismiss the seventh cause of action, and otherwise affirmed, without costs.

Friedman contends that he justifiably relied on Anderson's misrepresentations about the Wittenberg Group (Wittenberg) when selecting Wittenberg to become his money manager and handle the revenue he earned from the sale of his company, SIGS Publications, Inc. (SIGS). Friedman alleges that defendants recommended Wittenberg and misrepresented Wittenberg's compliance with its investment policy guidelines, Wittenberg's understanding of the new economy, Anderson's own profit from a number of Wittenberg's stock picks, and Wittenberg's prior success at making money for their clients. Friedman further contends that Anderson failed to disclose that Eisner received a commission from Wittenberg for "watching the [Friedman] account." Friedman allegedly suffered damages totaling $2,883,394.80 and $231,873.08, from two accounts set up and managed by Wittenberg, and he claims that these losses were "proximately caused by the manner in which these accounts were handled in a declining market, contrary to the representations of Anderson to Friedman." Of the seven causes of action set forth by plaintiffs, only the fourth, fifth, sixth and seventh are the subjects of this appeal.

The fourth and fifth causes of action concern negligence and negligent misrepresentations in defendants' recommendation of Wittenberg.

On a CPLR 3211 (a) (7) motion, if in any aspect upon the facts stated the plaintiff is entitled to recovery, a motion to dismiss for failure to state a cause of action must be denied (*see Guggenheimer v Ginzburg*, 43 NY2d 268, 275 [1977]). To establish a prima facie case for negligence, a plaintiff must prove (1) that defendant owed a duty to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom (*Evans v 141*

*Condominium Corp.*, 258 AD2d 293, 295 [1999]). "The existence of a legal duty is, of course, an essential element of any negligence claim" (*Shante D. v City of New York*, 190 AD2d 356, 361 [1993], *affd* 83 NY2d 948 [1994]). The court must first, however, determine whether any legal duty exists.

Friedman maintains that once Anderson assumed the responsibility of recommending a professional investment manager, Anderson owed Friedman a duty of professional care with respect to that recommendation and further retention of Wittenberg. Defendants contend that they owed Friedman no duty of care because recommending a money manager was not within the scope of their professional accounting duties. Without a duty, defendants aver, Friedman's causes of action sounding in negligence fail to state a cause of action.

Accountants have a duty to perform within the scope of their professional accounting standards, which generally go beyond simple auditing and bookkeeping.* Further, the type of financial management and planning advice that Anderson gave to Friedman is widely recognized throughout the accounting profession to be part of the typical services rendered by professional accountants. In other words, imparting financial advice regarding client investments is an integral part of accounting today.

We have previously held that an accountant is liable for professional negligence and bad faith in advising his client to invest in a particular tax shelter that he described as safe and conservative (*see Lavin v Kaufman, Greenhut, Lebowitz & Forman*, 226 AD2d 107, 109 [1996]; *see also Ambassador Factors v Kandel & Co.*, 215 AD2d 305 [1995] [affirming denial of defendant accountant's cross motion for summary judgment on plaintiff's claim that defendant acted in reckless disregard of the truth and with gross negligence when representations made were known to have been false]). The application of the AICPA rules to common-law negligence principles and our holding in *Lavin* (*supra*) require reinstatement of Friedman's negligence claims. By recommending Wittenberg to plaintiff, defendant was required to perform these professional services with due

---

* We note that although this Court has not expressly cited the practice and ethical rules promulgated by the American Institute of Certified Public Accountants (AICPA), which measure the professional standards applicable to accountants, the Court of Appeals has done so (*BDO Seidman v Hirshberg*, 93 NY2d 382, 390 [1999]). Specifically, rule 201 (D) of the AICPA Code of Professional Conduct provides that accountants shall "[o]btain sufficient relevant data to afford a reasonable basis for conclusions or recommendations in relation to any professional services performed." The AICPA rules extend to "any professional services performed," not limited to just traditional accounting services (*id.*).

care. That potential breach of duty, and the subsequent damages resulting therefrom, may form a proper basis for claims of negligence and negligent misrepresentation. Therefore, plaintiff has adequately stated a claim in the fourth and fifth causes of action.

The existence of the negligence claims however, does not create a fiduciary relationship between Friedman and the defendants. Generally, there is no fiduciary relationship between an accountant and his client (*DG Liquidation v Anchin, Block & Anchin*, 300 AD2d 70, 71 [2002]). "A conventional business relationship, without more, does not become a fiduciary relationship by mere allegation" (*Oursler v Women's Interart Ctr.*, 170 AD2d 407, 408 [1991]).

While providing financial advice may be within the scope of an accountant's duties, and so within the definition of a conventional business relationship, the standard that plaintiff must meet to sustain a cause of action for breach of fiduciary duty has not been met.

In the seventh cause of action, Friedman contends that defendants committed fraudulent misrepresentations in their recommendation of Wittenberg. "The essential elements of a cause of action for fraud are 'representation of a material existing fact, falsity, *scienter*, deception and injury' " (*New York Univ. v Continental Ins. Co.*, 87 NY2d 308, 318 [1995], quoting *Channel Master Corp. v Aluminium Ltd. Sales,* 4 NY2d 403, 407 [1958]). Friedman must show that a defendant knowingly uttered a false statement with the intention of depriving Friedman of a specific benefit, thereby deceiving and damaging him (*Channel Master Corp. v Aluminium Ltd. Sales,* 4 NY2d at 406-407).

"[A] mere recitation of the elements of fraud is insufficient to state a cause of action" (*National Union Fire Ins. Co. of Pittsburgh, Pa. v Christopher Assoc.*, 257 AD2d 1, 9 [1999]). Furthermore, a plaintiff seeking to recover for fraud and misrepresentation is required "to set forth specific and detailed factual allegations that the defendant personally participated in, or had knowledge of any alleged fraud" (*Handel v Bruder*, 209 AD2d 282, 282-283 [1994]).

In his complaint, Friedman merely asserts that Anderson knew his representations were false and were made without any knowledge or factual support. Also, Friedman contends that his damages "were proximately caused by the misrepresentations and omissions alleged above in that when the market did in fact decline, the very representations as to the competence and prior record of profits of the Wittenberg Group in a declining market

proved to be false and misleading." Even if we were to accord Friedman the benefit of all reasonable inferences, he still failed to adequately plead facts sufficient to make out a claim for fraud. Although Anderson was incorrect in his representations regarding Wittenberg, it cannot be concluded that Anderson made these statements with the intent to deceive or deprive Friedman of his financial earnings. A fraud claim is not actionable without evidence that the misrepresentations were made with the intent to deceive (*Handel v Bruder*, 209 AD2d at 283).

Friedman's fraud claim further fails because the complaint did not adequately plead causation. To establish a fraud claim, a plaintiff must demonstrate that a defendant's misrepresentations were the direct and proximate cause of the claimed losses (*see Laub v Faessel*, 297 AD2d 28, 30 [2002]). In *Laub*, we held that "[r]egardless of whether plaintiff could establish that he was induced by the alleged misrepresentations to follow [defendant's] recommendations on purchases of equities, plaintiff's claims must fail because he has not alleged or produced any evidence that those misrepresentations directly and proximately caused his investment losses" (*id.* at 31). Similarly, Anderson did not recommend a specific investment to Friedman, he simply suggested an investment advisor. Defendants' alleged misrepresentations may have played a role in Friedman's decision to choose Wittenberg, but the misrepresentations did not directly cause him to incur any losses.

Friedman has also alleged that he suffered losses in part due to defendants' fraudulent failure to disclose the fact that they received a commission for recommending Wittenberg. However, even after learning about this commission, Friedman still continued to invest with Wittenberg, a choice that was made independent of any statements or omissions on the part of defendant. This omission had no connection, causal or otherwise, with the losses Friedman incurred.

Since Friedman has not demonstrated that defendants' actions were the proximate cause of his loss, defendants' motion to dismiss the seventh cause of action should be granted. Concur—Mazzarelli, J.P., Marlow, Williams, Gonzalez and Catterson, JJ.