OPINION OF THE COURT
Eileen Bransten, J.
Motion sequence Nos. 005, 006, 007, and 008 are consolidated herein for disposition.
This action is the most recent in a series of litigations stemming from a real estate development in Las Vegas called the World Market Center (WMC project). In the instant action, plaintiffs complain that defendants Mousa Alliance and Nigel Alliance (Alliance brothers) failed to provide promised funding for the WMC project. Beyond seeking redress for that alleged breach, plaintiffs likewise bring claims against attorneys that represented nonparty NAMA Holding, Inc. in related litigations (the attorney defendants).
Presently before the court are four motions to dismiss the amended complaint, filed on behalf of all defendants:
• Defendants Steven A. Berger, Jonathan Rogin, and Berger & Webb LLP (collectively the Berger defend *851 ants) seek dismissal, pursuant to CPLR 3211 (a) (7), of the fraud and Judiciary Law § 487 claims asserted against them (motion sequence No. 005);
• Defendants The Law Offices of Ronald E Slates, EC., Ronald E Slates, and J. Steven Bingman (collectively the Slates defendants) move for dismissal of fraud and section 487 claims pursuant to CFLR 3211 (a) (7) and (8) (motion sequence No. 006);
• Defendants Alliance brothers request dismissal of all claims in the amended complaint pursuant to CFLR 3211 (a) (5) and (7) (motion sequence No. 007); and,
• Defendants Sidley Austin LLR Howard J. Rubinroit, and Ronald C. Cohen (collectively the Sidley defendants) seek dismissal of the same claims asserted against the Berger and Slates defendants pursuant to CFLR 3211 (a) (7) (motion sequence No. 008).
For the reasons that follow, defendants’ motions to dismiss are granted, and the amended complaint is dismissed in its entirety.
I. Background
The instant litigation is brought by plaintiffs Alliance Network, LLC (Alliance Network), Alliance Network Holdings, LLC, and Network World Market Center, LLC (collectively, the Alliance companies). The relationships between the parties trace back to the Alliance Network. Flaintiff Alliance Network was formed by nonparties Shawn Samson and Jack Kashani (together, the Alliance managers) to develop the WMC project. (Amended complaint ¶ 60.) Nonparty NAMA Holdings, LLC (NAMA) was a member of the Alliance Network, and defendant Alliance brothers were the individual members of NAMA. {Id. ¶¶ 24-25, 61.) The Berger defendants, Sidley defendants, and Slates defendants each represented NAMA in litigation against either the Alliance managers or the Alliance companies. {Id. ¶¶ 55-56.)
A. The California Litigation
On March 26, 2007, the Alliance companies—the plaintiffs in this action—commenced an arbitration proceeding in California against NAMA. {Id. ¶ 97.) The Alliance companies alleged that NAMA improperly refused to provide funding for the third phase of the WMC project. {Id. ¶¶ 66, 68, 96.)
*852 After 26 days of hearings, the arbitration panel issued its final award on August 3, 2009. The decision was largely in NAMA’s favor. While the panel deemed NAMA’s tender of funds for Phase 3 of the WMC project to be “ineffective” and found NAMA to be in default under the parties’ April 2004 settlement agreement, the panel rejected the remainder of the Alliance companies’ theories and awarded it no damages. {Id., exhibit 4 at 20 [arbitration award].) Conversely, the panel awarded over $12.75 million in damages against Alliance Network to NAMA, as well as $400,000 in sanctions to NAMA for the Alliance companies’ spoliation of evidence to be paid within 30 days of the award. (Id., exhibit 4 at 24-25.)
In addition, the panel awarded declaratory relief, ruling, inter alia, that Alliance Network was barred from making distributions to parties other than NAMA until all liens on the WMC project property, other than those on the Phase 3 building, were released. (Id., exhibit 4 at 23-24.)
The Alliance companies then filed a petition in the California Superior Court to vacate the award. (Id. ¶ 105.) NAMA likewise filed a cross-petition to have the award confirmed. (Id.) On June 25, 2010, the court confirmed the arbitration award in its entirety, and the California Court of Appeal and California Supreme Court later affirmed the judgment. (Id.; see also affirmation of Mary Beth Hogan [Hogan affirmation], exhibits 50, 52.)[1]
*853 B. The New York Litigation
After the issuance of the arbitration award, the focus of the parties’ efforts, as relevant to the instant motion, turned to New York State. In support of their fraud and Judiciary Law § 487 claims, plaintiffs’ amended complaint highlights three events: (1) NAMA’s TRO application before Justice Lowe; (2) the September 7, 2010 stipulation staying the enforcement of a First Department order reversing the TRO granted by Justice Lowe; and, (3) NAMA’s representations to this court regarding its percentage ownership of the Alliance companies. Each of these events is described below.
1. NAMA’s TRO Application
After the arbitration award, but before the California court order confirming it, NAMA applied for a temporary restraining order in this court in the NAMA Holdings, LLC v Greenberg Traurig LLP case (index No. 601054/2008). (Amended complaint ¶ 109.) NAMA sought a restraining order against the Aliance managers, Shawn Samson and Jack Kashani, and was represented by the Sidley defendants and the Berger defendants. (See Hogan affirmation, exhibit 36 [NAMA’s moving brief in support of TRO].)
In support of its application, NAMA argued that there was
“a substantial likelihood that defendants Samson and Kashani (the Alliance Companies’ managers) will imminently cause the companies to wrongfully distribute as much as $9.2 million dollars (or more) to their own company, Prime Associates Group, LLC (‘Prime’), and/or other third-parties, in direct violation of a recent arbitral award that explicitly prohibits such a distribution.” (See Hogan affirmation, exhibit 36 at 1.)
Counsel for the Alliance managers opposed the motion and disputed NAMA’s arguments. Notably, the Alliance managers argued that, contrary to NAMA’s assertion, the lien conditions imposed by the arbitration panel did not bar distributions by the Aliance Network, as no such liens existed. (See Hogan affirmation, exhibit 41 at 22, lines 12-21 [Nov. 16, 2009 oral argument tr].) Further, the Aliance managers contended that, while the Aliance companies had $9.2 million in assets, “[t]here is no intention to use any portion of the accrued [assets] to make any distribution.” (Id., exhibit 38 ¶ 6 [aff of Katherine Venezia in opposition to NAMA’s TRO application].)
Ater hearing the parties’ arguments, Justice Lowe granted the TRO to “preserve the status quo of the findings of the *854 arbitration panel.” {Id., exhibit 41 at 43, line 5 [Nov. 18, 2009 oral argument tr]; amended complaint ¶ 112].) Noting the Alliance managers’ contention that there was “no intention” to make a distribution of the $9.2 million at issue, Justice Lowe stated that the TRO was “going to make sure that that intention is solidified.” {Id. at 43, lines 2-3.) Although the Alliance managers expressed concern that the TRO would render them unable to pay ordinary business expenses, Justice Lowe informed the parties that, if they were unable to come to an agreement on expenses, the Alliance managers could petition the court to obtain approval for an expenditure. {Id. at 58, lines 12-25; amended complaint ¶ 12.)
2. Stipulation Concerning Enforcement of the California Judgment
On June 25, 2010, the arbitration award was confirmed in California state court. {See amended complaint ¶ 115.) Upon entering the judgment, the California court stayed enforcement to allow the Alliance companies time to post an appellate bond. {Id.)
At a July 30, 2010 hearing, the California court addressed whether NAMA could take procedural steps before the expiration of the stay to expedite enforcement of the judgment once the stay expired on August 19, 2010. {See Hogan affirmation, exhibit 43 at 50, lines 7-24 [July 30, 2010 oral argument tr].) The court granted this request, stating that NAMA could perform preparatory tasks, such as filing motions and applications for writs of attachment, while the stay was pending. {Id. at 50, lines 7-11.) The court clarified, however, that NAMA could not “levy or attach anything.” {Id. at 50, lines 21-23.)
Shortly thereafter, the Alliance managers brought an emergency application in the First Department, seeking to modify the TRO entered by Justice Lowe to permit Alliance companies’ funds to be used to post the bond in the California action. (Amended complaint ¶ 117.) In response to this application, Justice Helen Freedman issued an order restraining NAMA from “executing on [the] California judgment pending a determination of [this] motion by [the] full panel.” {Id., exhibit 7 [the August 12th order].)
The Berger defendants, as counsel for NAMA, wrote to Justice Freedman, noting their understanding that the August 12th order’s prohibition on “executing” on the California judgment prohibited only “levying” and not the preparatory steps blessed by the California court. {See amended complaint ¶ 121; Hogan affirmation, exhibit 47.) The court did not respond to this letter.
*855 On September 7, 2010, the First Department issued an order vacating the TRO, effective September 12, 2010. (76 AD3d 804 [2010]; amended complaint ¶ 128.) The Berger defendants and the Sidley defendants then asked the Alliance managers to consent to extending the effective date, due to upcoming religious holidays. (Id. ¶ 129.) Alliance managers consented to the request, and a stipulation was entered into by the parties on September 7, 2010 (the stipulation). (Id. ¶ 137.) The stipulation stated that “Defendants Samson and Kashani will continue abiding by the TRO and Plaintiff NAMA will continue abiding by the August 12, 2010 Order” until September 16, 2010 at 5:00 p.m. (Id.) Before the stipulation was executed, Alliance managers’ counsel emailed the Berger and Sidley defendants on the evening of September 7, 2010, stating his belief that “you are barred from taking any steps to enforce the judgment” absent clarification from Justice Freedman about the scope of her TRO. (Id. ¶ 135.) Defendant Cohen responded to this email the next day on behalf of NAMA. In his email, Cohen noted that “we agree that ‘execution’ in the Stipulation meant the same thing as ‘executing’ in the Court’s August 12th Order, but we have never conceded there is any question as what that term means and, indeed, believe its meaning is quite clear.” (Id. ¶ 139; see also id., exhibit 11.)
Plaintiffs allege that the defendants—including the Slates defendants, NAMA’s California counsel—breached the stipulation by taking steps to enforce the California judgment in California court before the September 16th deadline. Specifically, plaintiffs point to: defendants’[2] September 13th applications for writs of execution; defendants’ September 16th applications for subpoenas to enforce the judgment; and defendants’ notices of levy, which were sent to plaintiffs’ banks. (Id. ¶ 146.) In addition, plaintiffs allege that two of the banks acted on the notice of levy before the September 16th 5:00 p.m. deadline, freezing plaintiffs’ account prematurely in violation of the stipulation. (Id.)
3. NAMA’s Representations Regarding its Percentage Ownership of the Alliance Companies
Finally, plaintiffs assert that the Sidley defendants and the Berger defendants misrepresented NAMA’s percentage ownership in the Alliance Network to this court. This purported misrepresentation was made in December 2012 in the context of a *856 discovery motion in the NAMA Holdings, LLC v Greenberg Traurig matter.[3] Specifically, plaintiffs assert that defendants falsely claimed that NAMA is the 70% owner of Alliance Network. (Id. ¶ 163.) This representation purportedly was made to bolster NAMA’s claim of entitlement to “the privileged documents of the Alliance companies as the 70% majority member.” (Id.) Notably, the Sidley and Berger defendants’ representation was opposed by counsel for Alliance Network members Crescent and Fordgate, who asserted that NAMA’s 70% interest was “adjusted” following Fordgate’s investment in Alliance Network. (Id. ¶ 167.)
C. The Instant Litigation
On February 7, 2013, plaintiffs filed the instant 14-count amended complaint, asserting the following claims: (1) breach of contract against the Alliance brothers; (2) violation of Judiciary Law § 487 against the attorney defendants; (3) aiding and abetting a violation of Judiciary Law § 487 against all defendants; (4) conspiracy to violate Judiciary Law § 487 against all defendants; (5) fraud against all defendants; (6) conspiracy to defraud against all defendants; (7) aiding and abetting fraud against all defendants; (8) breach of contract against the attorney defendants; (9) breach of fiduciary duty against the Alliance brothers; (10) constructive fraud against the Alliance brothers; (11) conversion against the Alliance brothers; (12) unjust enrichment against the Alliance brothers; (13) express contractual indemnity against the Alliance brothers; and (14) a request for a permanent injunction to be entered against all defendants.
All defendants have filed motions to dismiss, which are currently before the court.
II. Discussion
The claims at issue in the amended complaint are many and, for the sake of clarity, are best divided by category of defendant. Accordingly, the analysis that follows will first focus on the claims asserted against the attorney defendants and then will turn to those claims brought against the Alliance brothers.
A. Attorney Defendants’ Motions to Dismiss
Each of the attorney defendants seeks dismissal of the fraud and Judiciary Law-based claims asserted against them pursuant *857 to CPLR 3211 (a) (7). On a motion to dismiss a complaint for failure to state a cause of action, all factual allegations must be accepted as truthful, the complaint must be construed in a light most favorable to the plaintiff and the plaintiff must be given the benefit of all reasonable inferences. (Allianz Underwriters Ins. Co. v Landmark Ins. Co., 13 AD3d 172, 174 [1st Dept 2004].) “We . . . determine only whether the facts as alleged fit within any cognizable legal theory.” (Leon v Martinez, 84 NY2d 83, 87-88 [1994].) However, “factual claims [that are] either inherently incredible or flatly contradicted by documentary evidence are not entitled to such consideration.” (Mark Hampton, Inc. v Bergreen, 173 AD2d 220, 220 [1st Dept 1991] [citation omitted], lv denied 80 NY2d 788 [1992]; see also Caniglia v Chicago Tribune-N.Y. News Syndicate, 204 AD2d 233 [1st Dept 1994].)
In addition, the Slates defendants move for dismissal under CPLR 3211 (a) (8), on the grounds that the court does not have personal jurisdiction over them.
1. Count 2—Violation of Judiciary Law § 487
Section 487 (1) of the Judiciary Law provides that an attorney who “[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party” shall “forfeit[ ] to the party injured treble damages, to be recovered in a civil action.” The attorney defendants seek dismissal of plaintiffs’ section 487 claim on several grounds, including failure to state a claim. However, before delving into the parties’ arguments as to each of the misrepresentations alleged, there is a threshold issue that troubles the court and requires dismissal of plaintiffs’ claims.
Each of the misrepresentations highlighted by plaintiffs occurred in separate litigations, and for two of the three categories of misrepresentations, occurred before different judges. The pleading here does not allege that plaintiffs sought redress for these purported misrepresentations in these other actions. Further, the amended complaint does not allege that plaintiffs know anything now that they did not know when the alleged deceit occurred. While plaintiffs allege that defendants were deceiving courts by misrepresenting facts in briefing and oral argument— and deceiving plaintiffs themselves by breaching a stipulation— plaintiffs never filed motions for contempt, never sought to enforce the allegedly breached stipulation, and never raised these allegations of deceit before the courts where the deceit, in fact, allegedly occurred.
*858 The First Department has held that a party’s remedy for a violation of section 487 stemming from an attorney’s actions in a litigation “lies exclusively in that lawsuit itself, . . . not a second plenary action.” (Yalkowsky v Century Apts. Assoc., 215 AD2d 214, 215 [1st Dept 1995].) This logic has been revisited and repeated by the First Department. (See e.g. Chibcha Rest., Inc. v David A. Kaminsky & Assoc., P.C., 102 AD3d 544, 545 [1st Dept 2013]; Seldon v Spinnell, 95 AD3d 779, 779 [1st Dept 2012].) The same logic applies here. Plaintiffs’ section 487 claim is not properly before this court in this action. Instead, plaintiffs should have sought their remedies in the cases in which the wrongdoing allegedly was committed.
Plaintiffs acknowledge this line of First Department cases in their briefing but attempt to sidestep it. For example, plaintiffs argue that Yalkowsky is distinguishable, since in that case, a judgment had been entered in the underlying action. However, the First Department did not premise its ruling in Yalkowsky on the existence of a judgment in the prior lawsuit. The judgment itself was of no dispositive weight. Instead, where “[plaintiffs’ allegations stem from [defendant attorneys’] alleged misconduct in connection with a fee dispute in Civil Court,” the First Department concluded that plaintiffs’ remedy, if any, for that section 487 claim lay in the Civil Court action. (Chibcha Rest., Inc., 102 AD3d at 545.)
Further, plaintiffs maintain that this action falls under an exception to Yalkowsky, allowing for a second action to proceed where the “fraud in the underlying action was merely a means to the accomplishment of a larger fraudulent scheme.” (Plaintiffs’ brief in opp to Sidley defendants’ motion to dismiss at 17-18, citing Specialized Indus. Servs. Corp. v Carter, 68 AD3d 750, 752 [2d Dept 2009].) However, this exception only applies where the “larger fraudulent scheme” is “greater in scope than the issues determined in the prior proceeding.” (Specialized Indus., 68 AD3d at 752.) Here, the alleged fraudulent scheme pertains to the attorney defendants’ advocacy in support of enforcing the arbitration. No greater scheme is alleged. While plaintiffs contend that the attorney defendants have engaged in a “war of attrition” for the Alliance brothers’ personal gain, they offer no facts to support this allegation. Instead, all facts as pleaded with regard to the attorney defendants pertain to their advocacy with regard to the arbitration award and its enforcement. Therefore, plaintiffs’ attempt to circumvent Yalkowsky fails, and their section 487 claim is dismissed.
*859 a. The Attorney Defendants’ CPLR 3211 (a) (7) Arguments
Even if plaintiffs’ section 487 claim was properly brought before this court, review of the pleading reveals that plaintiffs fail to state a claim. As the language of the statute provides, intentional deceit of a party or a court is an essential element of a section 487 claim. (See Agostini v Sobol, 304 AD2d 395, 395 [1st Dept 2003].) Likewise, a section 487 claim requires a pleading of injury proximately caused by defendants’ alleged deceit. (See Strumwasser v Zeiderman, 102 AD3d 630, 631 [1st Dept 2013]; Rozen v Russ & Russ, P.C., 76 AD3d 965, 968 [1st Dept 2010].) For the reasons that follow, the court concludes that plaintiffs’ pleading satisfies neither element.
1. Intentional Deceit
Plaintiffs’ violation of section 487 claim fails because plaintiffs have not alleged facts sufficient to plead the requisite element of intentional deceit. Simply put, plaintiffs have not alleged “the type of intentional, egregious conduct required to permit recovery under the statute.” (Strumwasser v Zeiderman, 2012 NY Slip Op 30772[U], *6 [Sup Ct, NY County, Mar. 15, 2012], affd 102 AD3d 630 [1st Dept 2013]; see also O’Callaghan v Sifre, 537 F Supp 2d 594, 596 [SD NY 2008] [noting that the reach of section 487 is confined to “intentional egregious misconduct”].) Each of the statements alleged were made within the confines of an adversarial proceeding, in the context of advocating for ÑAMA. As the O’Callaghan court stated:
“By confining the reach of the statute to intentional egregious misconduct, this rigorous standard affords attorneys wide latitude in the course of litigation to engage in written and oral expression consistent with responsible, vigorous advocacy, thus excluding from liability statements to a court that fall well within the bounds of the adversarial proceeding.” (537 F Supp 2d at 596 [citation and internal quotation marks omitted].)
Of course, the fact that such statements were made in the course of litigation does not, in and of itself, preclude a section 487 action. However, the “deceits” at issue here are different in type and kind from those giving rise to a viable section 487 claim.
The cases relied upon by plaintiffs in their briefing only serve to underscore this point. For example, plaintiffs rely heavily on the Court of Appeals decision in Amalfitano v Rosenberg (12 NY3d 8 [2009]). However, the facts of Amalfitano distinguish it from the conduct at issue here. In Amalfitano, the Court found *860 an intentional deceit where the attorney defendant, inter alia: submitted a false affidavit to the Appellate Division stating that his client was a partner in an enterprise in order to generate standing for his client, despite the attorney’s knowledge that the client held no such position; sought to introduce an unsigned tax return into evidence that fraudulently reflected his client’s interests, notwithstanding the attorney’s earlier production of a signed tax return reflecting different entries; and failed to correct deposition testimony by his client that the attorney knew to be false. (Id.) Thus, the lawyer in Amalfitano submitted falsified documents to the court and made representations about his own client that he knew to be false. Similar conduct is alleged in other cases relied upon by plaintiffs. (See Papa v 24 Caryl Ave. Realty Co., 23 AD3d 361, 361-362 [2d Dept 2005] [deeming attorney’s commencement of an action to foreclose on a mortgage to be an intentional deceit where the attorney knew of two prior judicial determinations that the mortgage was satisfied]; Luden v Nieroda, 2011 NY Slip Op 33537[U], *7 [Sup Ct, Nassau County, Dec. 9, 2011] [sustaining section 487 claim against attorneys who listed themselves as creditors in their client’s bankruptcy filing despite knowledge that no money was owed to them]; Cooke-Zwiebach v Oziel, 33 Misc 3d 1232[A], 2011 NY Slip Op 52194[U], *8 [Sup Ct, NY County, Dec. 2, 2011] [deeming section 487 claim viable where attorney misrepresented to the court that he represented a party to the action].)
Conversely, the allegations here are of an entirely different nature. In this action, plaintiffs do not allege that the attorney defendants falsified documents or made statements regarding matters particularly within their knowledge that were untrue. Instead, plaintiffs highlight the attorney defendants’ positions on contested issues in the underlying litigations and cast those positions as deceits. These allegations are far afield from the conduct found deceitful in Amalfitano.
Plaintiffs first point to two representations made by the Sidley defendants and the Berger defendants in support of NAMA’s application before Justice Lowe for a TRO: (1) the Sidley and Berger defendants’ statement that there was “a substantial likelihood” that the Alliance managers would “imminently cause the companies to wrongfully distribute as much as $9.2 million dollars (or more) to their own company and/or other third parties” (see amended complaint ¶¶ 107-108; Hogan affirmation, exhibit 36 at 1); and (2) the Sidley and Berger defendants’ representations regarding the conditions imposed by the *861 arbitral award on the Alliance Network’s distribution of funds. Neither statement is actionable under section 487.
Taking the facts pleaded by plaintiffs as true, both statements concern contested issues that were litigated before Justice Lowe. The attorney defendants presented evidence of the $9.2 million shown in the WMC project’s accounting records (see Hogan affirmation, exhibits 33-35 [exhibits W, X, Y to the affirmation of Ronald C. Cohen in support of NAMA’s TRO application]), as well as evidence of the Alliance managers’ distribution of funds after the issuance of the arbitration award. (See id., exhibits 27, 28 [exhibits G, I to the Cohen affirmation].) Justice Lowe also had the arbitration award before him so that he could examine the lien condition language himself. (See Hogan affirmation, exhibit 26 ¶ 12.) Plaintiffs then had the opportunity to dispute the attorney defendants’ arguments. The fact that plaintiffs did not agree with the import and the weight of the evidence used against them—or the conclusions drawn therefrom by Justice Lowe—does not brand the evidence or the arguments made by the Sidley and Berger defendants “deceitful.”
Next, plaintiffs assert that the attorney defendants violated Justice Freedman’s August 12th order, and breached the stipulation entered into by the parties, by “executing” on the California judgment before September 16, 2010 at 5:00 p.m. However, as plaintiffs’ recitation of the facts concedes, the meaning of “execute” was in dispute in the litigation. The California court blessed NAMA’s request to perform preparatory tasks, such as filing motions and writs of attachment, stating that the court’s stay on “executing” the arbitration award judgment only meant that NAMA could not “levy or attach anything.” (See Hogan affirmation, exhibit 43 at 50, lines 7-24.) The attorney defendants advocated that the California court’s construction of the term governed, while plaintiffs contended that the August 12th order’s prohibition on “executing” barred even preliminary activities taken in preparation of execution. This was a garden-variety dispute regarding the construction of a term in an order. Plaintiffs point to no case law holding that such a dispute may be classified as a “deceit” under section 487. In fact, to the contrary, New York courts have held that a cause of action for violation of Judiciary Law § 487 does not lie where attorneys advocate a reasonable interpretation of a document in the light most favorable to their clients, even if that position is ultimately wrong. (See Curry v Dollard, 52 AD3d 642, 644 [2d Dept 2008]; see also Haggerty v Ciarelli & Dempsey, *862 374 Fed Appx 92, 93-94 [noting that “New York does not readily assume (an intent to deceive) from conduct falling ‘well within the bounds of the adversarial proceeding’ ”]; Lazich v Vittoria & Parker, 189 AD2d 753, 754 [2d Dept 1993] [dismissing section 487 claim where “all the statements and conduct complained of were well within the bounds of the adversarial proceeding”].)
Moreover, to the extent that plaintiffs argue that the attorney defendants breached the stipulation by levying assets in plaintiffs’ Far East National Bank or East West Bank accounts before the stipulation’s expiration date, such allegations are belied by the notice of levy attached by plaintiffs as exhibit 17 to the amended complaint. The notice of levy specifically stated that it did not take effect until September 16, 2010 at 5:00 p.m. Pacific Standard Time. (See amended complaint, exhibit 17 at 2.) Thus, if any action was taken before the stipulation deadline, such action was taken in contravention of the explicit instructions included by the attorney defendants in the notice of levy. Further, exhibit 16 to plaintiffs’ amended complaint shows that the notice of levy for East West Bank was served on September 15, 2010 but not that any levy took place before the stipulation deadline. (See amended complaint, exhibit 16.) Accordingly, even taking all inferences in favor of plaintiffs, as this court must on a motion to dismiss, plaintiffs’ allegations regarding the August 12th order and the stipulation nonetheless fail to state a section 487 claim.
Finally, plaintiffs argue that the Sidley and Berger defendants misrepresented NAMA’s percentage ownership of the Alliance Network in a motion to compel before this court in the NAMA v Greenberg Traurig case. Once again, plaintiffs attempt to cast NAMA’s interpretation of language in the arbitration award as a fraud upon the court. While plaintiffs deem the Sidley and Berger defendants’ position to be “devoid of logic,” plaintiffs point to no case law supporting the proposition that a disputed legal argument—or one that even is dubbed illogical—is fraudulent on its face. Again, viewing the amended complaint’s allegations in the light most favorable to plaintiffs, the court concludes that the allegations regarding the NAMA motion to compel fail to state the intentional deceit element of a section 487 claim.
2. Injury
Beyond pleading a deceitful act, plaintiffs also must plead injury to state a section 487 claim. Specifically, plaintiffs must plead an injury proximately caused by the attorney defendants’ *863 alleged deceit. (See Strumwasser, 102 AD3d at 631; see also Amalfitano, 12 NY3d at 15.) As noted above, the amended complaint fails to make the requisite pleading of deceit; however, even assuming, arguendo, that plaintiffs pleaded deceit, their claim nonetheless would merit dismissal because it does not satisfy the injury requirement.
Plaintiffs allege no injury proximately caused by the Sidley and Berger defendants’ representations to Justice Lowe in their request for a TRO. Plaintiffs claim injury stemming from their expenditure of attorneys’ fees to oppose the TRO and appeal Justice Lowe’s ruling. However, as an initial matter, Justice Lowe’s ruling states that he did not rely on the Sidley and Berger defendants’ representations regarding the Alliance managers’ purportedly “imminent” distribution of the $9.2 million in granting the TRO. Instead, the court expressly granted the TRO to “preserve the status quo of the findings of the arbitration panel.” (See Hogan affirmation, exhibit 41 at 43, lines 5-6.) Accordingly, plaintiffs have failed to plead that the TRO “could not have gone forward in the absence of [the attorney defendants’] misrepresentation” regarding the $9.2 million. (Amalfitano, 12 NY3d at 15.)
The same is true of the lien conditions in the arbitration award. Justice Lowe premised his ruling on the arbitration award, as he construed it. (See Hogan affirmation, exhibit 41 at 41, lines 11-14 [discussing the “clear face” of the arbitration award].) The arbitration award was submitted as part of the record with the TRO request. (See Hogan affirmation, exhibit 26 ¶ 12 [affirmation of defendant Cohen in support of TRO attaching the arbitration award].) Therefore, again, plaintiffs have not alleged that the attorney defendants’ arguments regarding the meaning of language in the arbitration award—as opposed to Justice Lowe’s own interpretation—proximately caused the issuance of the TRO and the fees allegedly incurred by plaintiffs as a result.
Moreover, plaintiffs failed to plead injury stemming from the attorney defendants’ purported breach of the parties’ stipulation. At most, plaintiffs plead that two banks began levying on plaintiffs’ account hours before the stipulation deadline. Plaintiffs assert no injury stemming from this early levy. Further, the levy activities were not undertaken at the attorney defendants’ request, as discussed above. Thus, even if some injury were alleged, plaintiffs have not pleaded that it was proximately caused by the attorney defendants’ misrepresentation.
*864 Finally, plaintiffs assert no injury resulting from the Sidley and Berger defendants’ alleged misrepresentations to this court in the context of the NAMA v Greenberg Traurig motion to compel. Construing plaintiffs’ allegations in the light most favorable to them, plaintiffs appear to argue that their injury stems from having to pay attorneys’ fees to oppose NAMA’s motion to compel. However, plaintiffs assert no injury proximately caused by the Sidley and Berger defendants’ representation that NAMA owns a 70% interest in the Alliance Network. Further, plaintiffs cite no case law for the proposition that a party is entitled to attorneys’ fees, in the absence of a contractual provision, simply because it has to make an appearance to oppose a motion. Accordingly, plaintiffs fail to plead injury and their section 487 claim is dismissed.[4]
b. The Slates Defendants’ CPLR 3211 (a) (7) Arguments
In addition to the arguments addressed above, the Slates defendants raise certain dismissal arguments specific to themselves. Specifically, the Slates defendants contend that a section 487 claim cannot lie against them because the amended complaint fails to plead that they had any contact with New York or the New York courts. The court agrees.
The reach of section 487 extends only to misconduct by attorneys in connection with proceedings before New York courts. (See Schertenleib v Traum, 589 F2d 1156, 1166 [2d Cir 1978]; see also Weksler v Kane Kessler; P.C., 2008 NY Slip Op 31720[U], *7 [Sup Ct, NY County, June 18, 2008] [same]; Southern Blvd. Sound v Felix Storch, Inc., 165 Misc 2d 341, 344 [Civ Ct, NY County 1995] [“The use of the term ‘the court’ means a court of the State of New York”], mod on other grounds 167 Misc 2d *865 371 [App Term, 1st Dept 1996].) As the Schertenleib court explained, section 487 is “intended to regulate, through criminal and civil sanctions, the conduct of litigation before the New York courts. We doubt it was the purpose of the New York State legislature to fasten on its attorneys criminal liability and punitive damages for acts occurring outside the state.” (589 F2d at 1166.)
Here, defendant Slates law offices is alleged to be a California law firm, and defendants Slates and Bingman are alleged to be attorneys at that firm. (See amended complaint ¶¶ 50-52.) There is no allegation that any of the Slates defendants had contact with New York or the New York courts related to the matters at issue in this dispute. Instead, the amended complaint asserts that the Slates defendants were involved with the execution of the California judgment in California. (See amended complaint ¶¶ 145-146.) Accordingly, the section 487 claim merits dismissal on this basis.
2. Counts 3 and 4—Aiding and Abetting and Conspiracy to Violate Section 487
Plaintiffs’ remaining section 487 claims likewise are dismissed. First, to state a claim for aiding and abetting liability, the pleading must allege, inter alia, underlying tortious conduct. (See e.g. Kagan v HMC-New York, Inc., 94 AD3d 67, 73 [1st Dept 2012]; Global Mins. & Metals Corp. v Holme, 35 AD3d 93, 102 [1st Dept 2006].) Since the underlying section 487 claim has been dismissed, the aiding and abetting claim necessarily fails.
Likewise, plaintiffs’ conspiracy claim is dismissed. Like an aiding and abetting claim, a civil conspiracy claim requires a demonstration of an underlying tort. (See Abacus Fed. Sav. Bank v Lim, 75 AD3d 472, 474 [1st Dept 2010].) Having failed to make that demonstration, plaintiffs’ conspiracy claim must be dismissed.
3. Counts 5 through 7—Fraud, Conspiracy to Defraud, and Aiding and Abetting Fraud Claims
Plaintiffs next bring fraud claims against the attorney defendants, premised on the same conduct alleged in the section 487 claim with regard to the stipulation. Plaintiffs argue that the Sidley defendants fraudulently induced plaintiffs to sign the stipulation by stating that NAMA would abide both with Justice Freedman’s order and the stipulation itself.
These fraud claims merit dismissal for the same reasons as plaintiffs’ section 487 claim. To state a claim for fraud, plaintiffs *866 must plead that the attorney defendants “knowingly uttered a false statement with the intention of depriving [plaintiffs] of a specific benefit, thereby deceiving and damaging [them].” (Friedman v Anderson, 23 AD3d 163, 166 [1st Dept 2005].) Plaintiffs cite to one misrepresentation in their claim, namely that the Sidley defendants falsely represented that they would continue to comply with the August 10th order until 5:00 p.m. on September 16. However, as discussed above in the context of the section 487 claim, this was not a misrepresentation. Instead, the parties took different positions on the meaning of the term “executing.” This was a typical dispute between counsel that does not give rise to a fraud claim. Moreover, as explained above, plaintiffs do not plead injury accruing from this purported misrepresentation. Accordingly, count 5 of the amended complaint is dismissed.
Since the underlying fraud claim is dismissed, plaintiffs’ conspiracy and aiding and abetting claims are likewise dismissed. (See Oster v Kirschner, 77 AD3d 51, 55 [1st Dept 2010]; Hoeffner v Orrick, Herrington & Sutcliffe LLP, 85 AD3d 457, 458 [1st Dept 2011] [“While a plaintiff may allege, in a claim of fraud or other tort, that parties conspired, the conspiracy to commit a fraud or tort is not, of itself, a cause of action”].)
4. Count 14—Permanent Injunction
Finally, plaintiffs’ request for a permanent injunction is dismissed. Since plaintiffs failed to state any substantive claim against the attorney defendants, injunctive relief is unavailing. “[Ijnjunctive relief is simply not available when the plaintiff does not have any remaining substantive cause of action,” since “permanent injunctive relief is, at its core, a remedy that is dependent on the merits of the substantive claims asserted.” (Weinreb v 37 Apts. Corp., 97 AD3d 54, 58-59 [1st Dept 2012].)
5. Slates Defendants’ CPLR 3211 (a) (8) Arguments
While the claims asserted against the Slates defendants merit dismissal under CPLR 3211 (a) (7), the court notes that the Slates defendants also sought dismissal under CPLR 3211 (a) (8). Even if not already dismissed for failure to state a claim, the amended complaint nonetheless would be dismissed as to the Slates defendants for lack of personal jurisdiction.
Plaintiffs ground their opposition to the Slates defendants’ motion in CPLR 302 (a) (2), which provides that “a court may exercise jurisdiction over any non-domiciliary . . . , who in person or through an agent . . . commits a tortious act within *867 the state.” Arguing that the term “agent” includes coconspirators, plaintiffs maintain that this court may exercise jurisdiction over the nonresident Slates defendants on the basis of acts committed within New York by the Slates defendants’ purported coconspirators, the Sidley and Berger defendants. Such an exercise of jurisdiction, however, requires, inter alia, the pleading of a tortious act. (See CPLR 302 [a] [2]; New Media Holding Co. LLC v Kagalovsky, 97 AD3d 463, 465 [1st Dept 2012] [holding that long-arm jurisdiction properly exercised under CPLR 302 (a) (2) where “defendants-appellants are alleged co-conspirators in the commission of a tort in New York State through an agent”].) Since no tortious acts by the Slates defendants have been stated, the court concludes that it cannot exercise long-arm jurisdiction and grants the CPLR 3211 (a) (8) motion.[5]
B. Alliance Brothers’ Motion to Dismiss
The second category of claims asserted in the amended complaint pertain to the Alliance brothers. Plaintiffs assert a broad range of claims against the Alliance brothers—from the same section 487 and fraud claims brought against the attorney defendants to breach of contract and conversion.
The Alliance brothers now seek dismissal of the 13 claims asserted against them pursuant to CPLR 3211 (a) (5) and (7). First, the Alliance brothers argue that the section 487 and fraud claims asserted against the attorney defendants likewise fail as to them. Next, they contend that plaintiffs are collaterally estopped from asserting the breach of contract claims found in counts 1 and 13 of the amended complaint. Finally, plaintiffs argue that the remaining causes of action fail to state a claim. Each argument will be addressed in turn.
1. Counts 3 through 7—Section 487 and Fraud Claims
The Alliance brothers first seek dismissal of the section 487 and fraud claims of the amended complaint. These claims, as addressed at length above, pertain to the attorney defendants’ advocacy on behalf of NAMA in separate litigations. In their motion to dismiss, the Alliance brothers contend that these allegations fail to state a claim, just as they failed to state a claim against the attorney defendants.
*868 As a threshold matter, section 487 “is only applicable to attorneys and cannot extend derivative liability to a client.” (Yalkowsky v Century Apts. Assoc., 215 AD2d 214, 215 [1st Dept 1995].) Therefore, no section 487 claim has been stated against the Alliance brothers. Since no underlying section 487 claim has been alleged against either the attorney defendants or the Alliance brothers, the conspiracy to violate and aiding and abetting a violation of section 487 claims lack merit and are dismissed. (See e.g. Kagan v HMC-New York, Inc., 94 AD3d 67, 73 [1st Dept 2012]; Abacus Fed. Sav. Bank v Lim, 75 AD3d 472, 474 [1st Dept 2010].)
Likewise, plaintiffs’ fraud claims fail as to the Alliance brothers. As discussed above, to state a fraud claim, plaintiffs must plead that the Alliance brothers “knowingly uttered a false statement with the intention of depriving [plaintiffs] of a specific benefit, thereby deceiving and damaging [them].” (Friedman v Anderson, 23 AD3d 163, 166 [1st Dept 2005].) For the reasons addressed at length with regard to the fraud claim brought against the attorney defendants, plaintiffs fail to allege a misrepresentation in support of this claim. Indeed, plaintiffs fail to allege any false statement made by the Alliance brothers themselves. To the extent that plaintiffs rely upon the Sidley defendants’ representation that they would comply with the August 10th order until 5:00 p.m. on September 16th, this statement was not a misrepresentation by the Alliance brothers giving rise to a fraud claim. Accordingly, count 5 of the amended complaint is dismissed.
Given the dismissal of the underlying fraud claim, plaintiffs’ conspiracy and aiding and abetting claims are also dismissed. (See Oster v Kirschner, 77 AD3d 51, 55 [1st Dept 2010]; Hoeffner v Orrick, Herrington & Sutcliffe LLP, 85 AD3d 457, 458 [1st Dept 2011] [“While a plaintiff may allege, in a claim of fraud or other tort, that parties conspired, the conspiracy to commit a fraud or tort is not, of itself, a cause of action”].)
2. Counts 1 and 13—Breach of Contract and Express Contractual Indemnity
The Alliance brothers next seek dismissal of the breach of contract claims alleged in counts 1 and 13, arguing that they are barred under the doctrines of res judicata and collateral estoppel. The court agrees.
Plaintiffs’ claims in counts 1 and 13 predate the allegations giving rise to the section 487 and fraud claims by several years. These claims instead focus on the same issues addressed in the *869 arbitration between NAMA and the Alliance companies, which resulted in the August 3, 2009 award that was confirmed in California and became the subject of the enforcement activities discussed throughout this decision.
In short, plaintiffs allege in the amended complaint that NAMA entered into an agreement with the Alliance companies on or about October 25, 2006, whereby NAMA agreed to invest in Phase 3 of the WMC project. (See amended complaint ¶ 182, exhibit 1 [copy of Oct. 25, 2006 agreement].) NAMA purportedly breached this agreement, and plaintiffs now seek to hold the Alliance brothers liable as the alter egos of NAMA. (Id. ¶¶ 184-190.) In addition, plaintiffs claim entitlement to indemnification from the Alliance brothers as the alter egos of NAMA under section 9.01 of the Alliance operating agreement. (Id. ¶¶ 286-289.) The Alliance brothers are not parties to this agreement. (Id. ¶ 65, exhibit 21.)
These allegations largely track those asserted by plaintiffs in their arbitration demand. Specifically, plaintiffs brought breach of contract and indemnity claims against NAMA in the arbitration. (See Hogan affirmation, exhibit 19 ¶¶ 113-116 [Alliance companies’ first amended demand for arbitration or arbitration demand].) As in the instant amended complaint, the Alliance companies’ arbitration demand alleged that on or about October 25, 2006, NAMA agreed to invest in Phase 3, and that NAMA breached that agreement. (Compare amended complaint ¶¶ 182, 184 with arbitration demand ¶¶ 49, 115.) Stemming from this alleged breach, the Alliance companies sought indemnification under section 9.01 of the Alliance operating agreement, just as they do here. (Compare amended complaint ¶¶ 286-288 with arbitration demand ¶ 116.) Notably, plaintiffs do not dispute the similarity of their claims.
The arbitration award addressed these claims as to NAMA, awarding no damages to the Alliance companies. Although the panel found that NAMA’s conditional tender of funds to the Alliance companies was in breach of its agreement to provide Phase 3 funding, the panel concluded that the “consequence of that default was to lose any rights associated with Phase 3 of the [WMC project] . . . contrary to the contentions of the other parties, that is the only interest NAMA lost.” (See amended complaint, exhibit 4 at 13.) The panel considered the Alliance companies’ broad request for damages, including but not limited to indemnification of fees and expenses under section 9.01 of the Alliance operating agreement, and awarded them nothing. *870 (Id. at 23-25.) Further, the panel specified that its award was “in full and final satisfaction of all claims submitted in this arbitration.” (Id. at 25.)
a. Res Judicata
Plaintiffs now bring the same claims asserted against NAMA in the arbitration against the Alliance brothers as the alter ego of NAMA. Under New York law, the doctrine of res judicata, or claim preclusion,
“bars successive litigation based upon the same transaction or series of connected transactions if: (i) there is a judgment on the merits rendered by a court of competent jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was.” (Matter of People v Applied Card Sys., Inc., 11 NY3d 105, 122 [2008] [internal quotation marks and citation omitted].)
The parties do not dispute that the arbitration panel issued a judgment on the merits. Instead, plaintiffs contend that the Alliance brothers were not parties to the previous arbitration and that the alter ego claim asserted against the AJliance brothers in this litigation is therefore viable. This argument contains a fatal flaw. By alleging that NAMA is the “alter ego” of the Alliance brothers, plaintiffs assert that NAMA and the Alliance brothers are in privity with each other. (See UBS Sec. LLC v Highland Capital Mgt., L.P., 93 AD3d 489, 490 [1st Dept 2012] [finding no need to remand matter for a determination of whether defendants are in privity where complaint seeks to hold one defendant liable as the alter ego of another defendant]; see also Syncora Guar. Inc. v J.P. Morgan Sec. LLC, 110 AD3d 87, 93 [2013] [noting that plaintiffs “own allegations support a finding of privity for res judicata purposes”].) Since NAMA was a party to the arbitration, and NAMA is in privity with the Alliance brothers, res judicata bars plaintiffs’ attempt to bring successive litigation based upon the Phase 3 investment.
Moreover, alter ego liability is not a “cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners.” (Matter of Morris v New York State Dept. of Taxation & Fin., 82 NY2d 135, 141 [1993].) Thus, under res judicata, the claims asserted against the Alliance brothers on an “alter ego” theory are identical to those claims previously litigated against their alleged corporate entity, NAMA, and are therefore barred.
*871 b. Collateral Estoppel
The claims are likewise barred under the doctrine of collateral estoppel, or issue preclusion, which “precludes a party from relitigating an issue which has previously been decided against him in a proceeding in which he had a fair opportunity to fully litigate the point.” (Kaufman v Eli Lilly & Co., 65 NY2d 449, 455 [1985].) Again, the breach of contract claims asserted here are the precise claims litigated by the Alliance companies against NAMA in the arbitration. The Alliance companies plaintiffs do not argue that they lacked the opportunity to litigate these claims; instead, they argue that these claims are viable against the Alliance brothers under an alter ego theory, since they were not parties to the arbitration. However, plaintiffs’ alter ego theory fails to salvage these claims. Instead, these claims seek to impose liability on the Alliance brothers for actions purportedly committed by NAMA, notwithstanding the fact that an arbitration decision already decided the same issues giving rise to the same claims and awarded plaintiffs no damages. Accordingly, if not already dismissed on res judicata grounds, counts 1 and 13 would be barred by collateral estoppel.
3. Counts 11 and 12—Conversion and Unjust Enrichment
Plaintiffs next bring claims against the Alliance brothers for conversion and unjust enrichment, arising from the alleged breach of the stipulation. The amended complaint alleges that Mousa and Nigel’s “agents” wrongfully seized funds from plaintiffs’ accounts by levying on those funds hours before the expiration of the stipulation.
To state a claim for conversion, plaintiffs must plead two elements: (1) plaintiffs’ possessory right or interest in the property at issue; and (2) the Alliance brothers’ dominion over the property or interference with it, in derogation of plaintiffs’ rights. (See Colavito v New York Organ Donor Network, Inc., 8 NY3d 43, 49-50 [2006].) Plaintiffs’ claim fails as to the second element. As discussed at length with regard to plaintiffs’ fraud and section 487 claims, infra, the facts pleaded by plaintiffs in their amended complaint do not support their conclusory allegation that the Alliance brothers exercised dominion over the funds or otherwise interfered with them. As the notices of levy attached to plaintiffs’ amended complaint reveal, the banks holding plaintiffs’ funds were informed by the attorney defendants that the levying was not to occur until September 16, 2010 at 5:00 p.m. (See amended complaint, exhibits 17, 18 [notices of levy].) Aside from plaintiffs’ conclusory statement under count 9, the *872 remainder of the amended complaint pleads that notwithstanding the request by the attorney defendants that the levy occur in conformance with the stipulation, two banks began the levying process, at most, a day early. Plaintiffs have not pleaded that the Alliance brothers themselves or their alleged agents exercised dominion or interfered with their rights to the funds, only that two banks acted slightly prematurely. Count 11 is dismissed.
Plaintiffs’ unjust enrichment claim likewise merits dismissal. Unjust enrichment is a quasi-contract theory of recovery, and “is an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties concerned.” (IDT Corp. v Morgan Stanley Dean Witter & Co., 12 NY3d 132, 142 [2009].) Here, however, plaintiffs have pleaded the existence of an agreement governing the timing of the levy—the stipulation. Thus, plaintiffs’ unjust enrichment claim is dismissed as duplicative of their breach of contract claim. (See New York City Educ. Constr. Fund v Verizon N.Y. Inc., 114 AD3d 529, 532 [1st Dept 2014].)
4. Plaintiffs’ Remaining Claims
The Alliance brothers next seek dismissal of plaintiffs’ breach of contract, breach of fiduciary duty, and constructive fraud claims. (See Alliance brothers’ moving brief at 14.) Plaintiffs offer no opposition to this branch of the Alliance brothers’ motion. Accordingly, defendants’ motion is granted.
Finally, plaintiffs’ claim for a permanent injunction is dismissed. As discussed above with regard to plaintiffs’ claim against the attorney defendants, “injunctive relief is simply not available when the plaintiff does not have any remaining substantive cause of action,” since “permanent injunctive relief is, at its core, a remedy that is dependent on the merits of the substantive claims asserted.” (Weinreb v 37 Apts. Corp., 97 AD3d 54, 58-59 [1st Dept 2012].)
III. Conclusion
Accordingly, it is ordered that defendants Steven A. Berger, Jonathan Rogin, and Berger & Webb LLP’s motion to dismiss (motion sequence No. 005) is granted and that the Clerk is directed to enter judgment in favor of defendants Steven A. Berger, Jonathan Rogin, and Berger & Webb LLP dismissing this action, together with costs and disbursements to defendants, as taxed by the Clerk upon presentation of a bill of costs; and it is further ordered that defendants The Law Offices of *873 Ronald E Slates, EC., Ronald E Slates, and J. Steven Bingman’s motion to dismiss (motion sequence No. 006) is granted, that plaintiffs’ cross motion for jurisdictional discovery is denied, and that the Clerk is directed to enter judgment in favor of defendants The Law Offices of Ronald E Slates, EC., Ronald E Slates, and J. Steven Bingman dismissing this action, together with costs and disbursements to defendants, as taxed by the Clerk upon presentation of a bill of costs; and it is further ordered that defendants Mousa Alliance and Nigel Alliance’s motion to dismiss (motion sequence No. 007) is granted and that the Clerk is directed to enter judgment in favor of defendants Mousa Alliance and Nigel Alliance dismissing this action, together with costs and disbursements to defendants, as taxed by the Clerk upon presentation of a bill of costs; and it is further ordered that defendants Sidley Austin LLR Howard J. Rubinroit, Ronald C. Cohen’s motion to dismiss (motion sequence No. 008) is granted and that the Clerk is directed to enter judgment in favor of defendants Sidley Austin LLR Howard J. Rubinroit, Ronald C. Cohen dismissing this action, together with costs and disbursements to defendants, as taxed by the Clerk upon presentation of a bill of costs.

. On a motion to dismiss, the court may consider documents referenced in a complaint, even if the pleading fails to attach them. (See e.g. Deer Consumer Prod,., Inc. v Little, 32 Misc 3d 1243[A], 2011 NY Slip Op 51691[U], *4 [Sup Ct, NY County, Aug. 31, 2011].) Further, “it is well established that a court may take judicial notice of undisputed court records and files,” including the California judgment referenced here. (See e.g. RGH Liquidating Trust v Deloitte & Touche LLP, 71 AD3d 198, 207-208 [1st Dept 2009] [internal quotation marks omitted] [taking judicial notice of bankruptcy filings in federal court], revd on other grounds 17 NY3d 397 [2011]; see also Matter of Khatihi v Weill, 8 AD3d 485, 485-486 [2d Dept 2004] [“Contrary to the petitioner’s contention, this Court may take judicial notice of undisputed court records and files”]; Levin v Kozlowiski, 13 Misc 3d 1236[A], 2006 NY Slip Op 52142, **2 n 1 [Sup Ct, NY County, Nov. 14, 2006, Fried, J.] [considering “other court filings,” including declarations filed in a federal action, on CPLR 3211 (a) (7) motion].) Although plaintiffs here dispute the court’s ability to take notice of the records of the California proceeding, the arbitration, and the temporary restraining order (TRO) application to Justice Lowe, notably plaintiffs do not dispute the veracity of the records themselves. Accordingly, since the records themselves—as opposed to their use—are undisputed, the court may take notice of the records of the collateral proceedings referenced by plaintiffs in their complaint.

. The pleading is general and does not specify which defendant performed these acts.

. While originally assigned to Justice Lowe, this matter was reassigned to this court after the issuance of the TRO and before the filing of the discovery motion at issue.

. The court notes that the attorney defendants offered additional arguments in support of their motion to dismiss. For example, the attorney defendants argued that plaintiffs’ allegations of injury stemming from their purported inability to post a bond in the California action as a result of the TRO were meritless. Also, the attorney defendants challenged plaintiffs’ claimed injury based on inability to pay their attorneys after the TRO was entered. The court notes that plaintiff failed to oppose either of these arguments in its briefing. (See Patel v American Univ. of Antigua, 104 AD3d 568, 569 [1st Dept 2013] [stating that failure to oppose arguments raised by motion to dismiss results in waiver].) However, the court also notes that these arguments fail for the same reasons set forth above—plaintiffs have not pleaded that these injuries were proximately caused by the Sidley and Berger defendants’ purported misrepresentations. Also, it bears noting that Justice Lowe expressly informed plaintiffs that they could petition the court for approval of any necessary expenditures, if NAMA refused to approve them. (See Hogan affirmation, exhibit 41 at 58, lines 12-25.) However, the record reflects that the Alliance managers never did so.

. With their opposition to the Slates defendants’ motion to dismiss, plaintiffs’ submitted a cross motion seeking jurisdictional discovery. Since plaintiffs failed to plead a tortious act as required for long-arm jurisdiction under CPLR 302 (a) (2), the court concludes that there are no fact issues meriting discovery. Accordingly, plaintiffs’ cross motion is denied.